94 P.3d 401 (2004)
STATE of Washington, Respondent,
v.
James J. McCONVILLE, Appellant.
No. 52266-3-I.
Court of Appeals of Washington, Division 1.
July 19, 2004.
*403 Corbin T. Volluz, Attorney At Law, Mount Vernon, WA, for Appellant.
Erik Pedersen, Mount Vernon, WA, for Respondent.
AGID, J.
James McConville appeals his conviction of one count of first degree theft. He argues that the State lacked sufficient evidence, independent of his confessions, to prove the corpus delicti of the crime charged. The trial court rejected this claim because the corpus delicti rule governs whether confessions are admissible and McConville had already stipulated to their admission. We hold that a defendant like McConville may raise a corpus delicti challenge in the trial court before both sides have rested, even if the court has already admitted his confessions. But we reject McConville's challenge on the merits because sufficient prima facie evidence corroborated his confessions. We affirm the conviction.

FACTS
In September 1998, James McConville became the general manager of the Oakwood Homes Corporation's Mount Vernon store. Oakwood Homes manufactures, sells, finances, and insures factory-built homes. In late 1999 or early 2000, after receiving complaints about the Mount Vernon store, an Oakwood Homes' loss prevention specialist conducted an audit and discovered approximately $181,000 missing. McConville ultimately confessed to taking the money. In a three-page written statement, McConville explained that he had an agreement with a vendor called Normnde Enterprises in which Normnde would inflate an invoice, receive a check for the inflated amount from Oakwood Homes, and then return the excess money to McConville. McConville stated that the excess money totaled approximately $180,000, approximately $100,000 of which went back to Oakwood Homes to cover various business expenses. He expressed his regret and apologized.
In February 2000, Oakwood Homes reported the theft to the Skagit County Sheriff's Office. When interviewed by a Skagit County detective, McConville again admitted taking $181,000 and returning $100,000 to the company. In December 2000, the detective requested an arrest warrant for McConville. In April 2002, the Skagit County Prosecutor's Office charged McConville with first degree theft.
In December 2002, McConville signed a declaration that contradicted his previous confessions. He stated that in late 1998 he met with Don Strick, his supervisor and district manager for Oakwood Homes. McConville's best friend Greg Kontos was present at the meeting. Strick allegedly told McConville that he was having difficulty finding vendors because the financing procedures for site preparation took too long. He therefore asked McConville to create a slush fund of approximately $20,000, from which McConville could pay vendors without waiting for the lengthy process of obtaining financing from the corporate office. Strick also told McConville to use the slush fund to assist prospective customers in making down payments. McConville was to create the slush fund by artificially increasing contractor bids and sending the inflated invoices to the financing department, which would issue inflated checks to the contractor. The contractor, who would be informed of the arrangement, would then issue a check to McConville for the overage.
McConville allegedly did as Strick told him, but in 2000 the head accountant contacted *404 McConville and expressed his concern about the finances. Strick also contacted McConville to tell him that they were in trouble. Strick asked McConville to take the blame so that Strick could maintain his position as district manager and, in that position, keep Oakwood Homes from pressing charges against McConville. That is why, McConville alleged, he confessed to stealing the money.
But in February 2003, Strick wrote a declaration stating that he never met with McConville outside the office, never met Greg Kontos, never encouraged McConville to set up a down payment assistance program, and Oakwood Homes never had difficulty finding vendors. Kontos had died in December 2001, leaving no one to corroborate McConville's declaration.
McConville moved to dismiss the charge due to preaccusatorial delay and violation of Criminal Rule (CrR) 8.3(b), arguing that the State's delay in filing charges deprived him of the ability to obtain Kontos' testimony. The trial court denied the motion. In February 2003, the parties stipulated to admission of the police report, which consisted of the detective's report, McConville's written confession, checks, purchase orders, and bills. McConville also waived his right to a jury trial. In April 2003, the court conducted a trial on stipulated facts. At the conclusion of the State's case in chief, McConville moved to dismiss the charge based on the corpus delicti rule. The trial court denied the motion and convicted McConville.

DISCUSSION

I. Preaccusatorial Delay and CrR 8.3(b)

A delay between an alleged criminal act and the filing of charges may violate the defendant's due process rights and require dismissal.[1] The court balances several factors to determine whether preaccusatorial delay violates due process. The defendant must show the delay prejudiced him, the State must give reasons for the delay, and if the State is able to justify the delay, the court balances the State's interest and the prejudice to the defendant.[2] The court will only reach the second part of the test if the defendant established prejudice.[3] Here, the trial court found that McConville failed to demonstrate prejudice.
We review a trial court's prejudice analysis for manifest abuse of discretion.[4] "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons."[5] To succeed on a preaccusatorial delay claim, a defendant must show actual, rather than speculative, prejudice.[6] "The mere possibility of prejudice is not sufficient to meet the burden of showing actual prejudice."[7] The trial court is in the best position to determine whether a defendant suffered actual prejudice.[8]
*405 In this case, McConville argues that he suffered actual prejudice because his witness died before the State filed the charge. According to McConville, Kontos would have contradicted Strick's declaration by testifying that Strick directed McConville to inflate invoices and use the excess money to create a slush fund for the business. But this testimony would have been irrelevant for two reasons. First, Kontos would have testified only that Strick instructed McConville to place $20,000 into a slush fund. Kontos would not have been able to testify that McConville was authorized to place $180,000 into the fund or that he used the entire $180,000 for business purposes. And second, even if Strick instructed McConville to create the slush fund, that does not in any way justify McConville's actions. The trial court properly determined that McConville failed to demonstrate prejudice and did not err by denying McConville's motion to dismiss for preaccusatorial delay.
Nor did the court err when it denied McConville's motion to dismiss under CrR 8.3(b). CrR 8.3(b) allows a court to dismiss a criminal prosecution when arbitrary action or governmental misconduct prejudices the defendant's rights in a way that materially affects his right to a fair trial. McConville argues that the State's charging delay deprived him of Kontos' testimony and thus of a fair trial. But to succeed with this claim, McConville must prove by a preponderance of the evidence that he suffered actual, rather than speculative, prejudice that affected his right to a fair trial.[9] And, as discussed above, McConville did not prove that he suffered actual prejudice from the State's delay because Kontos' testimony would not have been a defense to the charged crime.

II. The Corpus Delicti Rule and Confessions Admitted by Stipulation

McConville next argues that the trial court should have dismissed the charge against him based on the corpus delicti rule.[10] Under this rule, a defendant's confessions alone are insufficient to convict him and must be corroborated by independent evidence.[11] This rule "arose from a judicial distrust of confessions, coupled with the view that a confession admitted at trial would probably be accepted uncritically by a jury, thus making it extremely difficult for a defendant to challenge."[12] It protects defendants from unjust convictions based solely on confessions which may be of questionable reliability.[13]
In this case, the parties stipulated to admission of the police reports, which included McConville's written confession and the police report stating that McConville verbally confessed. McConville then raised his corpus delicti challenge after the State finished its case in chief. The State objected, arguing that the corpus delicti rule regulates the admission of confessions and was inapplicable here because McConville already stipulated to their admission. The trial court agreed.
Whether a defendant who stipulates to admission of his confession may later raise a corpus delicti challenge is an issue of first impression in Washington. The corpus delicti rule is a judicially created rule of evidence, not a constitutionally mandated sufficiency of the evidence requirement.[14] It controls the admission of a confession by prohibiting a court or jury from considering *406 that confession unless the State offers independent, prima facie, corroborative evidence of the crime.[15] The State argues that because McConville stipulated to the admission of his confessions, he has waived the right to later bring a corpus delicti challenge. But prior cases suggest that a defendant does not waive his right to challenge admission of his confession where the issue has been raised at some point in the trial court.
Our courts have held that a defendant may raise a corpus delicti challenge at any time during the trial, even after the State has presented its case in chief. In State v. Aten, the defendant raised a corpus delicti challenge after the State had rested.[16] While the timing of the challenge was not at issue, the Supreme Court did reverse the conviction based on insufficient evidence of the corpus delicti.[17] And in State v. Pietrzak, the defendant raised a corpus delicti challenge after the State had rested and while the defense was presenting its case.[18] The State argued that the defendant waived the issue by raising it too late, but we concluded that a defendant need not raise a corpus delicti challenge during the State's case in chief.[19]
In State v. Ray, the Supreme Court permitted a challenge under the corpus delecti rule after a stipulation.[20] There, the defendant stipulated to the facts in the police report, including his confession, and the trial court convicted him. But the court later retracted its decision, found an insufficient showing of corpus delicti, and excluded the confession.[21] While the Supreme Court in Ray did not discuss whether a defendant who stipulates to his confession's admission may later raise a corpus delicti challenge, the case's outcome suggests that he may. The State has not articulated a persuasive reason to rule otherwise. We therefore hold that a defendant who has initially stipulated that his confession may be admitted does not waive his right to challenge its admission based on the corpus delecti rule if he raises the challenge in the trial court before both sides have rested. This will further the policy behind the corpus delecti rule  avoiding unreliable convictions based solely on confessions  without imposing unduly on the trial court's role in determining the order of testimony.[22]
Because McConville was entitled to raise a corpus delicti challenge below, we must now determine whether the State presented *407 sufficient evidence to corroborate his confessions. The State must present prima facie evidence; that is, "`evidence of sufficient circumstances which would support a logical and reasonable inference' of the facts sought to be proved."[23] Here, the trial court found that if the corpus delicti rule applies, sufficient independent evidence supports McConville's conviction. We review this decision de novo.[24] In determining whether the State presented prima facie evidence, we must first decide what evidence constitutes independent proof.[25] We also assume the truth of this evidence and make reasonable inferences in the State's favor.[26]
In this case, corroborating evidence must support a reasonable and logical inference that McConville wrongfully obtained or exerted unauthorized control over Oakwood Homes' property in an amount over $1,500 with the intent to deprive Oakwood Homes.[27] The State presented approximately 20 checks Oakwood Homes wrote to Normnde Enterprises, as well as corresponding Oakwood Homes purchase orders and Normnde bills. The State also presented approximately 12 checks, written by Normnde, that were either written for cash and endorsed by McConville or written directly to McConville. These checks total approximately $181,000.
The sole fact that McConville received checks totaling $181,000 supports the inference that he committed theft. "[T]he corpus delicti is not established when independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause."[28] But we cannot conceive of an innocent explanation for McConville's receipt of 12 checks, totaling $181,000, each of which were written by the contractor to McConville personally or endorsed by him. And the fact that his supervisor may have instructed McConville to participate in this scheme does not render it legal. Prima facie evidence exists to corroborate McConville's confessions.
We affirm.
BECKER and ELLINGTON, JJ., concur.
NOTES
[1] State v. Potter, 68 Wash.App. 134, 139-40, 842 P.2d 481 (1992) (citing United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); State v. Chavez, 111 Wash.2d 548, 558, 761 P.2d 607 (1988); State v. Calderon, 102 Wash.2d 348, 353, 684 P.2d 1293 (1984); State v. Bernson, 40 Wash.App. 729, 733, 700 P.2d 758, review denied, 104 Wash.2d 1016 (1985)).
[2] Id. at 140 (citing Chavez, 111 Wash.2d at 558, 761 P.2d 607; State v. Dixon, 114 Wash.2d 857, 860, 792 P.2d 137 (1990); State v. Lidge, 111 Wash.2d 845, 848, 765 P.2d 1292 (1989)).
[3] State v. Norby, 122 Wash.2d 258, 264, 858 P.2d 210 (1993).
[4] State v. Michielli, 132 Wash.2d 229, 240, 937 P.2d 587 (1997) (citing State v. Warner, 125 Wash.2d 876, 882, 889 P.2d 479 (1995)).
[5] State v. Blackwell, 120 Wash.2d 822, 830, 845 P.2d 1017 (1993) (citing State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)).
[6] Potter, 68 Wash.App. at 140, 842 P.2d 481 (citing Lovasco, 431 U.S. at 789, 97 S.Ct. 2044; United States v. Wallace, 848 F.2d 1464, 1469-70 (9th Cir.1988); United States v. Moran, 759 F.2d 777, 780 (9th Cir.1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986); Bernson, 40 Wash.App. at 734, 700 P.2d 758).
[7] Norby, 122 Wash.2d at 264, 858 P.2d 210 (citing State v. Ansell, 36 Wash.App. 492, 498-99, 675 P.2d 614, review denied, 101 Wash.2d 1006 (1984)).
[8] Potter, 68 Wash.App. at 141, 842 P.2d 481 (citing State v. Haga, 13 Wash.App. 630, 634, 536 P.2d 648, review denied, 86 Wash.2d 1007 (1975), cert. denied, 425 U.S. 959, 96 S.Ct. 1740, 48 L.Ed.2d 204 (1976); State v. Ansell, 36 Wash.App. 492, 497, 675 P.2d 614, review denied, 101 Wash.2d 1006 (1984); Bernson, 40 Wash.App. at 734, 700 P.2d 758).
[9] State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003) (citing Michielli, 132 Wash.2d at 239-40, 937 P.2d 587; State v. Starrish, 86 Wash.2d 200, 205, 544 P.2d 1 (1975)).
[10] "`Corpus delicti' literally means `body of the crime.' "State v. Aten, 130 Wash.2d 640, 655, 927 P.2d 210 (1996) (quoting 1 MCCORMICK ON EVIDENCE § 145, at 227 (John W. Strong ed., 4th ed.1992)).
[11] Id. at 655-56, 927 P.2d 210 (citing State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995); State v. Riley, 121 Wash.2d 22, 32, 846 P.2d 1365 (1993); City of Bremerton v. Corbett, 106 Wash.2d 569, 574-75, 723 P.2d 1135 (1986)).
[12] Id. at 656-57, 723 P.2d 1135 (citing Note, Proof of the Corpus Delicti Aliunde the Defendant's Confession, 103 U. PA. L.REV. 638, 642-43 (1995); Corbett, 106 Wash.2d at 576, 723 P.2d 1135).
[13] Id. at 657, 723 P.2d 1135 (citing Corbett, 106 Wash.2d at 576, 723 P.2d 1135).
[14] State v. C.D.W., 76 Wash.App. 761, 763, 887 P.2d 911 (1995).
[15] Id.; Aten, 130 Wash.2d at 656, 927 P.2d 210; State v. Dyson, 91 Wash.App. 761, 763, 959 P.2d 1138 (1998). See also 12 Royce A. Ferguson, Jr., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3324, at 884 (3d ed. 2004) ("The admissibility of an extrajudicial confession is dependent upon its corroboration by other evidence.").
[16] 130 Wash.2d 640, 654, 927 P.2d 210 (1996).
[17] Id. at 662, 927 P.2d 210.
[18] 110 Wash.App. 670, 678, 41 P.3d 1240, review denied, 147 Wash.2d 1013, 56 P.3d 566 (2002).
[19] Id. at 680, 41 P.3d 1240 (citing Aten, 130 Wash.2d at 654, 927 P.2d 210).
[20] 130 Wash.2d 673, 926 P.2d 904 (1996).
[21] Id. at 676, 926 P.2d 904.
[22] Aten, 130 Wash.2d at 656-67, 927 P.2d 210. We nonetheless encourage defense counsel to raise their corpus delicti challenges in pretrial motions or before stipulating to facts. See, e.g., Manning v. United States, 215 F.2d 945, 952 (10th Cir.1954) (quoting 7 Wigmore on Evidence, § 2073, at 404 (3d ed. 1940)) ("`That the evidence of the "corpus delicti" should be put in before a confession is certainly good practice, and is occasionally said to be the rule; but the better view is that the trial judge may determine the order of this evidence, on the general principles otherwise prevailing.'"). See also State v. Lung, 70 Wash.2d 365, 370-73, 423 P.2d 72 (1967) (the trial court admitted the defendant's confessions on the express condition that they would be withdrawn and excluded later if the State failed to prove the corpus delicti. The Supreme Court stated that "[a]lthough the independent evidence should generally establish the corpus delicti prior to the admission of the confession into evidence, the trial court has discretion to admit the confession upon the stipulation that it be corroborated by independent proof at a later time." Id. at 372, 423 P.2d 72.).

We also note that if the trial court rejects a corpus delicti challenge, an appellate court may consider any substantive evidence the defendant later introduces when determining the sufficiency of the evidence proving corpus delicti. State v. Liles-Heide, 94 Wash.App. 569, 572, 970 P.2d 349 (1999). "Thus, when the defendant elects to introduce substantive evidence on her own behalf following the denial of a corpus delicti motion, the defendant waives her challenge to the sufficiency of the evidence as it stood at that point." Id.
[23] Aten, 130 Wash.2d at 656, 927 P.2d 210 (quoting Vangerpen, 125 Wash.2d at 796, 888 P.2d 1177).
[24] State v. Pineda, 99 Wash.App. 65, 77-78, 992 P.2d 525 (2000) (citing Hollis v. Garwall, Inc., 137 Wash.2d 683, 690, 974 P.2d 836 (1999); Young v. Key Pharm., Inc., 112 Wash.2d 216, 226, 770 P.2d 182 (1989)).
[25] Aten, 130 Wash.2d at 657, 927 P.2d 210.
[26] Id. at 658, 927 P.2d 210 (citing Corbett, 106 Wash.2d at 571, 723 P.2d 1135; State v. Neslund, 50 Wash.App. 531, 544, 749 P.2d 725, review denied, 110 Wash.2d 1025 (1988)).
[27] RCW 9A.56.020(1)(a); 9A.56.030(1)(a).
[28] Aten, 130 Wash.2d at 660, 927 P.2d 210.