FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45961-2-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| GLENN T. HANSEN, | |
| Appellant. | |

BJORGEN, J. — Glenn T. Hansen appeals from his conviction for second degree

trafficking in stolen property, entered following a bench trial, and from the sentence imposed.

Hansen argues that the trial court should not have considered his statements to the investigating

officer because the State failed to independently establish the corpus delicti of the crime and that

without those statements, insufficient evidence supports the conviction. We agree with Hansen

on both points. Therefore, we reverse Hansen's conviction and remand for dismissal of the

charge with prejudice. With this resolution, it is not necessary to address Hansen's other claims.

## FACTS

On July 26, 2013, Hansen sold six pieces of "750 MCM" heavy-gauge copper wire,

totaling 346 pounds and about 150 feet, to Butcher's Scrap & Metal, a metal recycler in

Hoquiam, for $865. Hansen arrived at Butcher's with an associate, later identified as Eric Maki.

He and Maki had worked together in the salvage business for about five years and had often stripped and sold large quantities of wire. Hansen provided his driver's license as identification, and Butcher's kept a copy. A Butcher's employee became suspicious and called the Hoquiam police. Detective David Blundred visited Butcher's, obtained a copy of the receipt, photographed the wire, and took a sample.

On August 9, 2013, Tyrone Palmer, an employee of the Bank of the Pacific, visited "Carlson's Mill," a vacant sawmill the bank owned about five miles south of the town of Neilton. Palmer saw that someone had opened the concrete lids of certain underground vaults on the mill premises, and that no wire remained in the conduits to which the vaults provided access, which ran from a transformer to the mill's dry kiln. When Palmer had last visited the mill, on July 6, 2013, he had not noticed any problem with the vaults. Palmer had never looked inside the vaults before, however, and had no personal knowledge that the conduits ever contained any wire. Palmer informed Grays Harbor County Sheriff's Deputy Sean Gow, who visited the mill with Palmer and took photographs.

Grays Harbor County Sheriff's Detective Sergeant Brad Johansson visited Hansen shortly thereafter to ask "about the wire that had been sold to Butcher's Scrap Metal." Verbatim Report of Proceedings (VRP) at 64-65. Hansen's home was about four miles from Carlson's Mill. Hansen immediately asked to go get dressed so Johansson could take him to jail. Johansson replied that he just wanted to talk and that Hansen was not under arrest. Hansen then said that "he knew that he made a mistake, and he wasn't going to contest what he had done, and [Johansson] might as well go ahead and take him to jail," adding that he would take responsibility for what he had done. VRP at 65.

2

Johansson placed Hansen under arrest and gave him the *Miranda*[1] advisements. While they waited for another officer to arrive to take Hansen to jail, Hansen told Johansson the following story about how he had acquired the wire:

> [Hansen] said that Mr. Maki had called him late at night . . . and asked him to pick [Maki] up . . . south of Carlson's Mill on Highway 101, and they were just south of Highway 101. [Hansen] pulled over, Mr. Maki was on the side of the road, he had all the wire on the side of the road, hidden in the brush, and then they loaded the wire up, put it in his car, and took it back to his house. . . . [T]hey then sold it at Butcher's . . . the next day.

VRP at 68. Johansson asked whether the wire came from a different vacant sawmill, where Hansen had recently done salvage work, and Hansen denied it.

Johansson then confronted Maki with Hansen's story. After Maki "vehemently denied" it, Johansson interviewed Hansen and Maki together. VRP at 69. Hansen immediately admitted that he had lied, but invoked the right to counsel when asked why.

## PROCEDURAL HISTORY

The State charged Hansen with second degree trafficking in stolen property.[2] Hansen stipulated that he made his statements to Johansson voluntarily and after being properly advised of his rights, and the court found them admissible pursuant to CrR 3.5. During the hearing at which the trial court accepted the stipulation, however, defense counsel made clear that he

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Although the information identified the charge as second degree trafficking in stolen property, and the statutory provision cited, RCW 9A.82.055, requires the State to prove only that the defendant recklessly trafficked in stolen property, the information alleged that Hansen "did knowingly traffic in stolen property," conduct amounting to first degree trafficking in stolen property. Clerk's Papers at 1; RCW 9A.82.050. The State never filed an amended information. Because we hold the evidence insufficient to sustain even the lesser charge, the apparent error has no bearing on our resolution of this appeal.

3

wished to preserve a corpus delicti challenge to the admission of Hansen's statements, and the court noted that the stipulation applied only to admissibility under CrR 3.5.

Hansen pled not guilty, waived his jury rights, and proceeded to trial. Immediately before trial, the court inquired as to the admissibility of Hansen's pretrial statements, and defense counsel again raised the corpus delicti issue:

> We entered an order. . . . The day we did that, Your Honor was . . . the judge at the time, I said we were preserving the issue of admissibility under corpus delicti. . . . And the only issue that I preserved [at the pretrial hearing] was basic admissibility of any statement under corpus delicti.

VRP at 3-4. Defense counsel did not raise a corpus delicti challenge when Johansson testified to Hansen's statements, however, or subsequently argue the issue.

At trial, a Butcher's employee, Palmer, and various law enforcement officials testified to the facts as set forth above. Two employees of Grays Harbor Public Utility District (PUD) testified that, according to their records, at least some of the conduits leading to the mill's dry kiln had once contained insulated 750 MCM copper wire and that they had removed similar wire from the PUD substation serving the mill in February or May 2013. The PUD employees made clear that they did not remove any wire from the mill's conduits.

Commercial electrician Brad Jones testified that Palmer asked him to inspect the mill and prepare an "estimate on the cost of replacement, and what exactly it would take to get . . . the dry kilns back up and running." VRP at 28. Jones testified that 750 MCM copper wire is commonly used in industrial sites throughout Washington.

Maki testified that the night before he and Hansen visited Butcher's, he stayed in a tent on Hansen's property. Hansen arrived the day of the sale with the wire in the trunk of his vehicle and asked Maki to strip the insulation from it. Maki had often worked with Hansen to salvage much larger quantities and thought this "unremarkable." VRP at 56, 59. Maki did not recall if

4

Hansen ever said where he obtained the wire, but maintained that his and Hansen's salvage work had always been "legal" and "clean." VRP at 61.

The defense argued in closing that the State had presented "no evidence that this wire was stolen," let alone that Hansen knew it was stolen when he sold it to Butcher's. VRP at 71-77. Defense counsel argued that Hansen's statements to Johansson established at most that he "later realized maybe he made a mistake and [decided to] take responsibility," VRP at 76, but never specifically argued that the court should not consider the statements under the corpus delicti rule.

The trial court found that the State had proved each element of the charge beyond a reasonable doubt, noting that "[t]he State does not have to prove that the wire sold to Butcher's was removed from the premises of the mill." VRP at 79-80; Clerk's Papers (CP) at 16-20. The court acknowledged that the information alleged that Hansen knowingly trafficked in stolen property, and found that Hansen had done so. In making its findings, the trial court explicitly relied on Hansen's statements to Johansson tending to show consciousness of guilt.

The sentencing court imposed the maximum standard-range sentence for the charge, and Hansen appealed.

## ANALYSIS

Hansen argues that the State failed to establish the corpus delicti of trafficking in stolen property independently of his statements to Johansson, and that his conviction therefore rests on insufficient evidence. The State counters that the evidence presented tending to show that Hansen sold wire around the same time and place that Palmer noticed the same gauge of wire missing from the mill suffices to establish the corpus delicti, and that this evidence, together with Hansen's statements, supports the conviction. After setting forth the standard of review, we turn

5

to Hansen's corpus delicti challenge. Concluding that the corpus delicti rule precludes consideration of Hansen's incriminating statements, we then consider whether his conviction rests on sufficient evidence.

### I. STANDARD OF REVIEW AND GOVERNING LAW

In evaluating the sufficiency of the evidence supporting a criminal conviction, we review the evidence in the light most favorable to the State. *State v. Ehrhardt*, 167 Wn. App. 934, 943, 276 P.3d 332 (2012) (citing *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010)). We ask "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Drum*, 168 Wn.2d at 34-35 (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). An appellant who claims that insufficient evidence supports his conviction . "admits the truth of the State's evidence and all reasonable inferences therefrom." *Ehrhardt*, 167 Wn. App. at 943 (citing *Drum*, 168 Wn.2d at 35).

Where "the inferences and underlying evidence are strong enough to permit a rational fact finder to find guilt beyond a reasonable doubt, a conviction may be properly based on 'pyramiding inferences.'" *State v. Bencivenga*, 137 Wn.2d 703, 711, 974 P.2d 832 (1999) (quoting 1 CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL AND CRIMINAL § 5.17 at 450 (7th ed. 1992)). Inferences drawn from circumstantial evidence "must be reasonable and cannot be based on speculation." *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A jury may properly infer the mental element of an offense "from the conduct where it is plainly indicated as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The corpus delicti rule requires the State to present evidence, independent of the accused's incriminating statements, "sufficient to support the inference that there has been a

criminal act." *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006), *as amended*, (Jan. 26, 2007). Specifically, "the State must present evidence independent of the incriminating statement that the crime a defendant *described in the statement* actually occurred." *Brockob*, 159 Wn.2d at 328. That is, "[t]he State's evidence must support an inference that *the crime with which the defendant was charged* was committed." *Brockob*, 159 Wn.2d at 329. The *Brockob* court articulated the relevant standard as follows:

> In determining whether there is sufficient independent evidence under the corpus delicti rule, we review the evidence in the light most favorable to the State. The independent evidence need not be sufficient to support a conviction, but it must provide prima facie corroboration of the crime described in a defendant's incriminating statement. Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a "'logical and reasonable inference' of the facts sought to be proved." [*State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996) (quoting *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995))].
>
> . . .
>
> In addition to corroborating a defendant's incriminating statement, the independent evidence "'must be consistent with guilt and inconsistent with a[] hypothesis of innocence.'" [*Aten*, 130 Wn.2d] at 660 (quoting *State v. Lung*, 70 Wn.2d 365, 372, 423 P.2d 72 (1967)). If the independent evidence supports "reasonable and logical inferences of both criminal agency and noncriminal cause," it is insufficient to corroborate a defendant's admission of guilt. [*Aten*, 130 Wn.2d at 660].

*Brockob*, 159 Wn.2d at 328-29 (emphasis omitted) (footnotes and some citations omitted) (second alteration in original).

7

## II. Corpus Delicti of Trafficking in Stolen Property[3]

The State maintains that, to establish the corpus delicti of trafficking in stolen property, "[a]ll that is necessary is for the State to establish prima facia [sic] evidence that the property was stolen." Br. of Resp't at 12. From this, the State argues that it established the corpus delicti here by presenting evidence giving rise to a reasonable inference that someone stole wire similar to that which Hansen sold at around the same time and place as the sale. Under *Brockob*, 159 Wn.2d 311, more is required to establish corpus delicti.

The *Brockob* court considered three consolidated appeals, the first two involving intent to manufacture methamphetamine. 159 Wn.2d at 319, 321. In the first appeal, store security observed Brockob shoplifting 15 to 30 packages of "Sudafed," detained him, and summoned

---

[3] We have held in a number of cases that a defendant may not raise a corpus delicti challenge on appeal absent a timely objection in the trial court. *State v. C.D.W.*, 76 Wn. App. 761, 764, 887 P.2d 911 (1995); *accord, State v. Dodgen*, 81 Wn. App. 487, 492-94, 915 P.2d 531 (1996); *State v. McConville*, 122 Wn. App. 640, 648-50, 94 P.3d 401 (2004); *State v. Page*, 147 Wn. App. 849, 855, 199 P.3d 437 (2008). Notably, in *State v. Grogan*, 147 Wn. App. 511, 519, 195 P.3d 1017 (2008) (*Grogan* I), we declined to reach a corpus delicti challenge raised for the first time on appeal, relying on *Dodgen*. In *State v. Dow*, however, our Supreme Court subsequently made clear that the rule pertains both to the admissibility of a defendant's statements and to the sufficiency of the evidence supporting a conviction. 168 Wn.2d 243, 249, 252-53, 227 P.3d 1278 (2010).

Our Supreme Court then remanded *Grogan* I to our court to reconsider the decision in light of *Dow*. *State v. Grogan*, 168 Wn.2d 1039, 234 P.3d 169 (2010). On remand, we addressed Grogan's corpus delicti challenge on the merits. *State v. Grogan*, 158 Wn. App. 272, 273-74, 246 P.3d 196 (2010) (*Grogan* II). Subsequently, we addressed on the merits an apparently unpreserved corpus delicti challenge in *State v. Witherspoon*, 171 Wn. App. 271, 289-90 & n.7, 315, 286 P.3d 996 (2012), *aff'd*, 180 Wn.2d 875 (2014), noting that our Supreme Court had also apparently done so in *State v. Riley*, 121 Wn.2d 22, 31-32, 846 P.2d 1365 (1993). Thus, it appears that *C.D.W.*, *Dodgen*, *McConville*, *Page*, and *Grogan* I are no longer good law on the preservation question, and that a criminal defendant may raise the corpus delicti rule for the first time on appeal as part of a challenge to the sufficiency of the evidence under RAP 2.5(a)(2).

Regardless, this was a bench trial, and Hansen raised the corpus delicti issue with the court twice during the proceedings. Thus, even under the apparently erroneous preservation requirement, Hansen sufficiently apprised the trial court of the corpus delicti issue: "a defendant does not waive his right to challenge admission of his confession where the issue has been raised at some point in the trial court." *McConville*, 122 Wn. App. at 648.

police. 159 Wn.2d at 318-19. The responding officer questioned Brockob, who admitted that he stole the pills on behalf of someone who planned to make methamphetamine. 159 Wn.2d at 319. The State charged Brockob with possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine. 159 Wn.2d at 319. Testimony at trial established that Sudafed is used to manufacture methamphetamine. 159 Wn.2d at 319, 331.

In the second appeal, a police officer arrested an individual, Dusten Gonzales, during a traffic stop, searched the vehicle, and discovered three bottles of ephedrine tablets and several unused coffee filters. 159 Wn.2d at 320-21. The officer seized another bottle of ephedrine tablets from Gonzales's companion. 159 Wn.2d at 321. Gonzales later admitted that he had obtained the pills for someone who planned to make methamphetamine and sell some of the drug to Gonzales. 159 Wn.2d at 321. The State charged Gonzales with attempted manufacture of methamphetamine. 159 Wn.2d at 321-22. Expert testimony established that both ephedrine tablets and coffee filters are commonly used in methamphetamine manufacturing. 159 Wn.2d at 322.

The court held the evidence sufficient to establish the corpus delicti as to Gonzales, but not as to Brockob. 159 Wn.2d at 330-33. The facts that Gonzales also possessed coffee filters and was working with another to purchase ephedrine in excess of the legal limit gave rise to a reasonable inference that he intended to manufacture methamphetamine. 159 Wn.2d at 333. The court could thus properly consider Gonzales's statements in evaluating the sufficiency of the evidence. 159 Wn.2d at 339.

On the other hand, that Brockob stole more Sudafed than he could legally possess did not, without more, give rise to a reasonable inference that he intended to manufacture methamphetamine. Instead, "the State's independent evidence proved only that Brockob

9

intended to steal Sudafed." 159 Wn.2d at 332. The court based its holding "on the fact that the State's [independent] evidence was insufficient to support an inference that [Brockob] committed *the crime with which he was charged*." 159 Wn.2d at 332. The court ultimately reversed Brockob's conviction, holding that

> viewing the evidence in the light most favorable to the State[, n]o rational jury would have found that Brockob intended to manufacture methamphetamine merely because he shoplifted some Sudafed, even though it is known to be used to manufacture methamphetamine, absent some other evidence.

159 Wn.2d at 338.

In the third appeal, one Jeremy Cobabe attempted to take a compact disc/digital video disc (CD/DVD) player from a house in the presence of the roommate of the player's owner and used force when the roommate tried to stop him. *Brockob*, 159 Wn.2d at 324. After his arrest, Cobabe made incriminating statements to police. *Brockob*, 159 Wn.2d at 324-25. At trial, the player's owner testified that Cobabe had permission to take it, but the jury nonetheless found Cobabe guilty of robbery. *Brockob*, 159 Wn.2d at 326. After noting that the robbery statute requires proof that the defendant "intended to take property *against the will of its owner*," the *Brockob* court held the independent evidence insufficient to establish the corpus delicti because "the facts suggested an innocent hypothesis for the events;" that is, "the testimony suggested Cobabe may have had permission to take the CD/DVD player."[4] 159 Wn.2d at 334-35. The court thus concluded that "the independent evidence was insufficient to corroborate Cobabe's incriminating statement under the corpus delicti rule because the independent evidence supports hypotheses of both guilt and innocence." *Brockob*, 159 Wn.2d at 335.

---

[4] The court ultimately affirmed Cobabe's conviction because, even without his incriminating statements to police, the evidence sufficed to support the jury's verdict. *Brockob*, 159 Wn.2d at 340-41.

10

Similarly, in *Aten*, 130 Wn.2d at 656-63, on which the *Brockob* court heavily relied, *Brockob*, 159 Wn.2d at 328-30, 334-35, our Supreme Court considered whether the sudden death of a healthy infant by acute respiratory failure established the corpus delicti of homicide for purposes of a manslaughter conviction. The mother had made incriminating statements, but the autopsy could not determine whether suffocation or "Sudden Infant Death Syndrome," the "leading cause of death for apparently healthy infants who are between the ages of one week and one year," caused the baby's death. *Aten*, 130 Wn.2d at 661-62. The court acknowledged that the evidence gave rise to a reasonable inference of criminal negligence, but held that "the corpus delicti is *not* established when independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause" and thus declined to consider the mother's statements in evaluating the sufficiency of the evidence. *Aten*, 130 Wn.2d at 659-60, 667.

Our recent decision in *State v. Green*, 182 Wn. App. 133, 143-45, 328 P.3d 988, *review denied*, 337 P.3d 325 (2014), is also instructive. The defendant was convicted of manslaughter for the shooting death of her husband, William. In deciding that the State had established the corpus delicti of homicide where Green claimed her husband had committed suicide, the court considered various pieces of independent evidence:

> (1) William died of a gunshot wound to the front of his head; (2) Green was covered with blood when the officers arrived; (3) Green did not appear upset or overly emotional after the shooting; (4) Williams's right hand was wrapped around the gun's cylinder, which would be an unusual way of holding a gun to commit suicide; (5) Detective Doremus testified that the lack of blood spatter on William's left thumb indicated that it was on the outside, not the inside, of the trigger guard; and (6) Dr. Fino testified that the blood spatter evidence was consistent with the theory that someone other than William pulled the trigger.

*Green*, 182 Wn. App. at 144. Significantly, we held that "the first four pieces of evidence do not constitute independent evidence that Green shot William" because they "are not inconsistent with Green's innocence," and they thus "cannot satisfy the corpus delicti rule." *Green*, 182 Wn.

11

App. at 144 (citing *Brockob*, 159 Wn.2d at 329). Only the blood spatter evidence, inconsistent with William pulling the trigger, established the corpus delicti. *Green*, 182 Wn. App. at 144-45.

The force of these precedents is clear: the fact that the State's evidence gives rise to a reasonable inference that someone stole wire from the mill does not establish the corpus delicti of trafficking in stolen property. Absent Hansen's statements to Johansson, no evidence consistent with guilt but inconsistent with a reasonable hypothesis of innocence connects the theft with the wire Hansen sold to Butcher's. Although the theft and the sale occurred in the same geographical area, and likely around the same time, the uncontroverted testimony established both that 750 MCM wire is commonly found in industrial sites and that Hansen regularly salvaged metal from such sites. Thus, Hansen could well have legitimately obtained such wire from a different facility in the ordinary course of his employment.

Furthermore, even were we to agree that the independent evidence gave rise to a reasonable inference that Hansen sold wire stolen from the mill, absent Hansen's statements, nothing suggests that he had reason to suspect that the wire was stolen at the time he sold it. That is, Hansen could just as likely have obtained the wire under circumstances in which a reasonable person would not recognize a substantial risk that it was stolen.

Viewed in the light most favorable to the State, the "independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause." *Aten*, 130 Wn.2d at 660. Put another way, "the independent evidence supports hypotheses of both guilt and innocence." *Brockob*, 159 Wn.2d at 335. Thus, the independent evidence is perfectly consistent with the charged crime not having occurred at all. Absent Hansen's incriminating statements, it appears just as likely that Hansen sold wire he had legitimately obtained, or that he sold stolen

wire without knowledge of circumstances that would make a reasonable person aware of a substantial risk that the wire was stolen, as it does that he recklessly trafficked in stolen property.

The State charged Hansen with trafficking in stolen property, not theft. Contrary to the State's assertion, then, the fact that the evidence establishes the corpus delicti of theft is not "[a]ll that is necessary," Brief of Respondent at 12, to allow us to consider Hansen's statements: the State needed to present evidence sufficient "to support an inference that he committed *the crime with which he was charged.*" *Brockob*, 159 Wn.2d at 332. Furthermore, if "the independent evidence supports hypotheses of both guilt and innocence," the State has not established the corpus delicti. *Brockob*, 159 Wn.2d at 335. Here, the independent evidence falls well short of establishing the corpus delicti under these standards.

### III. SUFFICIENCY OF THE EVIDENCE

The State failed to establish a prima facie case that Hansen recklessly trafficked in stolen property, and the corpus delicti rule therefore precludes us from considering Hansen's incriminating statements in evaluating the sufficiency of the evidence. *Brockob*, 159 Wn.2d at 338-39; *Dow*, 168 Wn.2d at 249. The relevant statute required the State to prove that Hansen sold stolen property, that is, "property . . . obtained by theft, robbery, or extortion." RCW 9A.82.010(16); .055. The statute required also that he had done so recklessly, that is, that he both "kn[ew] of and disregard[ed] a substantial risk that" the property sold was stolen, and that his "disregard of such substantial risk [was] a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(c); RCW 9A.92.055. Absent Hansen's statements to Johansson, the evidence establishes only that Hansen, a metal salvager, sold commonly available wire to a recycler at roughly the same time that Palmer noticed the same kind of wire missing from the mill.

13

No. 45961-2-II

Viewing this evidence in the light most favorable to the State, no rational trier of fact could find beyond a reasonable doubt that Hansen (1) sold stolen wire or (2), assuming that he did so, that he was criminally reckless as to whether the wire was stolen. Other than Hansen's statements, no evidence gives rise to a reasonable inference that, at the time of the sale, he (1) knew of a substantial risk that the wire was stolen or (2) disregarded that risk under circumstances amounting to a gross deviation from the conduct of a reasonable person in the same situation. *See State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967) (holding that "bare possession of recently stolen property alone is not sufficient to justify a conviction" requiring proof that the defendant knew the property was stolen). The evidence is thus insufficient as to two essential elements of the charge.

We reverse Hansen's conviction and remand for dismissal of the charge with prejudice. Resolving the appeal on this ground, we decline to address the remainder of Hansen's claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

JOHANSON, C.J.

SUTTON, J.

14