IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77468-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| CHRISTOPHER GABRIEL MATHEWS, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: April 22, 2019 |

SMITH, J. — Christopher Mathews appeals his conviction for residential burglary. He argues that the trial court erred by denying his CrR 8.3(b) motion to dismiss and by reserving ruling on that motion rather than granting a mistrial. We hold that the trial court did not abuse its discretion by denying Mathews' motion or by reserving ruling thereon. Therefore, we affirm.

## FACTS

In July 2016, Mathews lived at the Trailwood Apartments in Redmond and worked nearby at DigiPen Institute of Technology (DigiPen), a game development school. Sean Wagemans and his girlfriend, Mariah Millard, also worked at DigiPen that summer and lived at the Trailwood Apartments with two other roommates in an apartment "kitty corner" to Mathews' unit.

On July 7, 2016, Mathews was distressed about something that had happened at work, so when he got home he poured himself a rum and coke.[1] He

---

[1] The record does not reflect what happened at work that caused Mathews to feel distressed.

then had two more rum and cokes, and as he finished his third drink, he began feeling worse about what had happened at work. He was angry and decided to walk over to Wagemans' apartment because he "wanted to start a confrontation."

When Mathews knocked on Wagemans' door, Wagemans answered. Wagemans did not recognize Mathews. Wagemans later testified that he said hello to Mathews, the two made eye contact, and then Mathews rushed at him, fists swinging. Wagemans testified that Mathews threw multiple punches at him, striking him in the face and chest. Wagemans also testified that he backed up into his apartment as Mathews continued swinging at him. When it was clear to him that Mathews would not stop, he grabbed Mathews by the shirt and punched him repeatedly in the face, fracturing Mathews' eye socket.

When Mathews stopped swinging, Wagemans let go and Mathews fell onto Wagemans' couch. Wagemans testified that at that point, he asked Mathews to leave, but Mathews refused. Wagemans then called out to a roommate, Gregor Smith, for help. Smith came downstairs and helped Wagemans forcibly remove Mathews from their apartment. They locked the door and called the police, who responded a short time later. An officer who responded to the scene testified that Wagemans had redness around his left eye and cheek, and a bloody lip.

The State charged Mathews with residential burglary with an aggravating factor because he committed the charged offense while Wagemans was present. Before trial, the State indicated that its theory was "that Mr. Mathews went to [Wagemans'] house to assault him because, essentially, of jealousy. That he

has feelings for Ms. Millard and wants to be with her." In support of its theory, the State requested in limine to introduce statements that Mathews had made to Millard, repeatedly informing her that he liked her, wanted to date her, and wanted her to break up with Wagemans. The trial court excluded Mathews' statements as well as any witness testimony recounting the statements.

Nevertheless, during voir dire, the prosecutor began part of his discussion with the venire with: "Okay. Now I want to talk about love. Quick, abrupt change. Has anyone here ever had the exchange—" Defense counsel interrupted and requested a sidebar. After the sidebar, the prosecutor continued: "Okay. We are not going to talk about love. I'm going to talk about something different." The court later memorialized the sidebar as follows:

> There was a question asked about something about a romantic relationship, and what if one person thinks that it's still going on, and the other feels that it's unwanted attention, and make[s] the person uncomfortable, and so that was the reason defense asked for a side bar, and then I inquired, . . . and then I recognized as part [of] one of the rulings on the motions in limine that we have excluded any evidence of a prior relationship between Mr. Matthews and Ms. Millard.
>  . . . .
> . . . So then I precluded anymore inquiry. That and essentially sustaining the defense objection.

During the sidebar, the court also expressed concern about the prosecutor's "staking" questions, i.e., questions that "ask a jury how they would decide basically [this] case by describing the evidence." Additionally, the court indicated it was concerned about the following exchange that had taken place earlier in voir dire, during which the prosecutor asked prospective jurors why someone who seems guilty might still go to trial:

[PROSECUTOR]: . . . I want to ask a few more questions about coming to trial. You know, sometimes someone might be a criminal defendant, and they might go to trial, and the case might seem pretty straightforward, and it might seem like they are guilty. Anyone here think of a reason why someone in that situation might still go to trial? What might they be thinking? Anybody?

[PROSPECTIVE JUROR]: Could you restate the question?

[PROSECUTOR]: Sure. What if a jury trial that someone who might be guilty might still go to jury trial. Why might they do that? Do you know? Sorry. What was that?

[PROSPECTIVE JUROR]: Did you say he is guilty?

[PROSECUTOR]: Sure. The jury could be wrong. Could you speak in the microphone.

[PROSPECTIVE JUROR]: I'm sorry. The jury could be wrong. You said he is guilty, right?

[PROSECUTOR]: Right.

Defense counsel did not object to this exchange or to the prosecutor's earlier "staking" questions.

The next day, Mathews filed a motion to dismiss under CrR 8.3(b). He argued that the prosecutor's "staking" questions, questions about why a guilty defendant might still go to trial, and statements about "love" constituted government misconduct warranting dismissal. Mathews requested in the alternative that the trial court grant a mistrial "and begin anew with a fresh, untainted venire." The court reserved ruling on the motion until after trial.

The jury convicted Mathews as charged. After the jury entered its verdict, Mathews submitted supplemental briefing on his motion to dismiss, alleging additional misconduct during trial.[2] The court denied the motion. The court concluded that the prosecutor had committed egregious misconduct by asking jurors to speculate as to why a guilty person might still want to go to trial. The

---

[2] Mathews also moved for a new trial based on juror misconduct, but that motion is not before us.

4

court also concluded that the prosecutor erred by referring to "love" and asking "staking" questions during voir dire, and by misstating the law during closing argument. But the court explained, "there was no resultant actual prejudice; the error was harmless beyond a reasonable doubt on this record."

Mathews appeals.

## ANALYSIS

### Motion To Dismiss

Mathews argues that the trial court erred by denying his CrR 8.3(b) motion to dismiss. We disagree.

Under CrR 8.3(b), the court is authorized to "dismiss any criminal prosecution due to . . . governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b). "To prevail on a motion to dismiss under this provision, 'the defendant must show by a preponderance of the evidence both (1) . . . governmental misconduct, and (2) actual prejudice affecting the defendant's right to a fair trial.'" State v. Williams, 193 Wn. App. 906, 909, 373 P.3d 353 (2016) (quoting State v. Martinez, 121 Wn. App. 21, 29, 86 P.3d 1210 (2004)). "Dismissal under this rule is an extraordinary remedy and is improper absent material prejudice to the rights of the accused." State v. Moen, 150 Wn.2d 221, 226, 76 P.3d 721 (2003). "A trial court's decision on a motion to dismiss under [CrR 8.3(b)] is reviewed for manifest abuse of discretion." Moen, 150 Wn.2d at 226. A trial court manifestly abuses its discretion when "no reasonable judge would have ruled as the trial court did." State v. Mason, 160 Wn.2d 910, 934,

162 P.3d 396 (2007).

Here, we assume for purposes of this analysis that Mathews has established the prosecutorial statements he complains of constituted governmental misconduct. We nonetheless hold that Mathews has not established that those statements actually prejudiced his right to a fair trial. Therefore, the trial court did not abuse its discretion by denying Mathews' motion.

First, Mathews does not point to anything in the record establishing that he was prejudiced by any of the prosecutor's comments. He argues that because there were multiple instances of misconduct, "there is a substantial likelihood the cumulative effect of the prejudice affected the jury's verdict." But this conclusory argument is speculative at best, and Mathews must show *actual* prejudice, not just speculative prejudice, under CrR 8.3(b). State v. Hand, 199 Wn. App. 887, 898, 401 P.3d 367 (2017), aff'd, ___ Wn.2d ___, 429 P.3d 502 (2018). Mathews also points to the fact that the jury foreperson indicated the jury had discussed and wondered about why the prosecutor broached the topic of love during voir dire. But the fact that the jury wondered about this statement is not enough to establish that Mathews was actually prejudiced by it, particularly where Mathews does not dispute that the foreperson also stated that he quickly reminded the jury not to consider the statement and that it did not factor into their decision.

Furthermore, the only contested issue in this case was whether Mathews entered or remained in Wagemans' apartment with intent to commit a crime against a person or property therein. As the trial court observed in its order denying Mathews' motion to dismiss, the State presented strong evidence that

Mathews entered or remained in Wagemans' apartment with the requisite intent. For example, Mathews testified that although he did not have a specific plan when he went to Wagemans' apartment, he walked there because he was "angry" and he "just wanted to start a confrontation." Additionally, only minutes after leaving Wagemans' apartment, Mathews messaged Millard on Facebook, telling her, "I went over to your house to punch your boyfriend. A lot."[3] And although there was conflicting testimony as to whether Wagemans' body was entirely inside his apartment when Mathews threw his first punch, Wagemans' testimony that Mathews continued punching as he entered the apartment was not contradicted.

Finally, Mathews' defense theory was that he was too intoxicated to have formed the specific intent to commit a crime. But there is little evidence that Mathews' intoxication had any impact on his ability to form intent. Mathews testified that he drank more than usual before going to Wagemans' apartment. But he still was able to recall in detail the sequence of events that led up to his going to Wagemans' apartment and confronting him, including that he felt scared after he knocked on Wagemans' door. Mathews was also able to describe in detail how Wagemans was positioned in his doorway when Mathews threw his first punch, including the way Wagemans was leaning and where Wagemans' arm was. Additionally, although an officer testified that he could smell alcohol on

---

[3] The trial court's order states that Mathews sent this message "a few hours" after the altercation. But Mathews testified that he did not arrive home until approximately 6:15 p.m. on the day of the altercation, and Millard testified that the message was sent at 7:13 p.m. that evening.

7

Mathews when he detained him, that officer also testified that Mathews was not having trouble forming coherent sentences, acting erratically, or exhibiting any other signs of intoxication.

Mathews relied in closing on the fact that a neighbor who saw Mathews as he was leaving Wagemans' apartment "thought" Mathews was drunk and that Mathews "looked disoriented." Mathews also argued that he was not acting rationally because he tried to resist Wagemans and Smith, who both were much larger than Mathews. But Mathews' disorientation could just as easily be explained by the fact that he was punched in the face so hard that his eye socket was fractured, and an exercise of poor judgment does not mean an inability to form intent. Cf. State v. Webb, 162 Wn. App. 195, 210-11, 252 P.3d 424 (2011) (affirming denial of voluntary intoxication instruction and observing that although defendant "showed unacceptably bad judgment," his other actions showed he was capable of forming intent).

In short, Mathews' arguments regarding prejudice are speculative at best. Furthermore, the State presented strong evidence regarding Mathews' intent— the sole contested issue in this case—whereas there was little evidence that Mathews' intoxication negated his ability to form specific intent. Under these circumstances, and taking into consideration that the trial court was in the best position to determine whether the prosecutor's conduct actually prejudiced Mathews, we cannot say that no reasonable judge would have denied Mathews' motion to dismiss. See State v. McConville, 122 Wn. App. 640, 646, 94 P.3d 401 (2004) (trial court in best position to determine whether defendant suffered actual

prejudice). Therefore, the trial court did not manifestly abuse its discretion by denying Mathews' motion.

*Request for Mistrial*

Mathews argues that the trial court erred by reserving its ruling on his CrR 8.3(b) motion and not granting a mistrial when he initially requested it. We disagree.

"The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). When a mistrial is requested due to alleged prosecutorial misconduct, "the defendant bears the burden to establish the conduct complained of was both improper and prejudicial." State v. O'Connor, 155 Wn. App. 282, 288, 229 P.3d 880 (2010). Furthermore, "'[t]he trial court is in the best position to most effectively determine if prosecutorial misconduct prejudiced a defendant's right to a fair trial.'" State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997) (internal quotation marks omitted) (quoting State v. Luvene, 127 Wn.2d 690, 701, 903 P.2d 960 (1995)). Therefore, "[w]here the defendant . . . moves for a mistrial on the basis of alleged prosecutorial misconduct, [we] will give deference to the trial court's ruling on the matter." Stenson, 132 Wn.2d at 719. Specifically, "[w]e review the trial court's denial of a mistrial for abuse of discretion, and we find abuse only 'when no reasonable judge would have reached the same conclusion.'" Emery, 174 Wn.2d at 765 (internal quotation marks omitted) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

9

Here, Mathews made only conclusory arguments below that the prosecutor's conduct prejudiced his right to a fair trial. Specifically, his CrR 8.3(b) motion focused on the prosecutor's alleged misconduct—not on its alleged prejudicial effect. And the only specific mention of prejudice that defense counsel offered during oral argument was a concern that if the court reserved ruling and then ultimately ordered a mistrial, the witnesses "will be testifying again having had the benefit of sitting in the hall waiting, possibly conferring." But the State explained that several times it had "impressed upon each [witness] quite a bit of emphasis that they are not allowed to discuss their testimony or about this case."

Furthermore, the trial court had legitimate reasons for not immediately declaring a mistrial: The first witness had already testified, the court desired to give the matter more thought, the State had not yet filed its response, and the court wished to give counsel the opportunity to review the transcript. The court also observed that if Mathews were ultimately acquitted, the matter would be moot. And finally, Mathews points us to no authority standing for the proposition that the trial court committed reversible error merely by not ruling immediately on his mistrial request. Under these circumstances, we cannot say that no reasonable judge would have declined to grant Mathews' request for a mistrial.

We affirm.

WE CONCUR: