198 P.3d 1057 (2009)
STATE of Washington, Respondent,
v.
Timothy Earl ADAMS, Appellant.
No. 26168-9-III.
Court of Appeals of Washington, Division 3.
January 13, 2009.
*1058 Janet G. Gemberling, Julia A. Dooris, Gemberling & Dooris P.S., Seattle, WA, for Appellant.
Arthur J. Bieker, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
SCHULTHEIS, C.J.
¶ 1 Timothy Adams appeals his conviction of maintaining a dwelling for controlled substances, claiming the trial court erred in prohibiting him from raising a "primary caregiver" defense under the Washington State Medical Use of Marijuana Act (Medical Marijuana Act or Act), chapter 69.51A RCW. We conclude that Mr. Adams produced sufficient evidence to raise the defense and therefore reverse and remand.

FACTS
¶ 2 In March 2005, Kennewick police officers received a tip that Mr. Adams was growing marijuana at his house in Kennewick. On March 12, while Mr. Adams was at work, police searched his home and garage. A medical marijuana permit not pertinent to this appeal was posted on the door of the garage. Inside the garage, officers found approximately 40 marijuana plants.
¶ 3 After the initial search, police officers Stan Howard and Lee Cooper drove to Mr. Adams' workplace in Pasco. Officer Howard immediately arrested and handcuffed Mr. Adams, who explained that he had a medical marijuana permit. Officers did not ask any follow-up questions or request documentation. Mr. Adams was transported directly to the Benton County jail.
*1059 ¶ 4 At the jail, Mr. Adams told Officer Cooper that he had medical use permits from two Portland doctors authorizing his medical use of marijuana. Officer Cooper did not follow up on this information or ask for any documentation.
¶ 5 The State charged Mr. Adams with maintaining a dwelling for controlled substances. Mr. Adams later filed a motion to allow the primary caregiver affirmative defense under the Medical Marijuana Act. In support of his motion, Mr. Adams submitted a November 27, 2004 letter, in which Ryan Ward appointed Mr. Adams as his medical marijuana caregiver; a verification that Dr. Thomas Orvald, Mr. Ward's authorizing physician, was licensed to practice in the state of Washington; and a 2004 medical authorization from Dr. Orvald for Mr. Ward's medical use of marijuana. The validity of these documents is not at issue.
¶ 6 At the outset of the hearing on the motion, the court noted that Mr. Adams had a "heavy" burden of proof. Report of Proceedings (Feb. 22, 2007) at 2. Mr. Adams argued that he should be allowed to use the primary caregiver defense under the Act because he possessed valid authorizing documents at the time of his arrest, but was never allowed to retrieve them.
¶ 7 The court initially granted Mr. Adams' motion, noting that Mr. Adams possessed the appropriate documentation prior to charging and that the Act was not clear as to when a person must provide such documents. The State moved for reconsideration of the decision, arguing that Mr. Adams' presentation of the documents was not timely and that a medical marijuana authorization is akin to a driver's license that should be carried at all times.
¶ 8 The court reversed its previous ruling, concluding:
1. March 12, 2005 was the date the defendant was questioned by law enforcement regarding his medical use of marijuana within the meaning of [former] RCW 69.51A.040(2)(C) and (4)(c) [1999].
2. March 12, 2005 was the date the defendant had the duty to present his authorization as a qualifying patient or designation as a caregiver under [former] RCW 69.51A.040(2)(C) and (4)(c).
3. The defendant at that time presented, by mentioning and directing officers to authorization documents from Doctor Dodge. Doctor Dodge was not a qualified physician, because he was not, at the time the authorization was signed, licensed to practice under RCW 18.71 as a Washington Physician....
4. The documents the defendant provided approximately a year and a half after his contact with law enforcement are not admissible under RCW Chapter 69.51A, because they were not provided nor mentioned when the defendant was questioned regarding his use of marijuana.
5. The defense motion, previously granted, is reconsidered, and the medical marijuana defense is hereby stricken.
Clerk's Papers at 74.
¶ 9 Mr. Adams was convicted on stipulated facts of maintaining a dwelling for controlled substances. He appeals the trial court's refusal to allow him to raise the medical marijuana defense.

ANALYSIS
¶ 10 We first address Mr. Adams' claim that the trial court applied the wrong standard in evaluating his request to raise the affirmative defense under the Act. He argues that the court's remark at the first hearing regarding the "heavy" burden of proof is evidence that the trial court failed to view the evidence in the light most favorable to him.
¶ 11 Mr. Adams is correct that in evaluating the sufficiency of the evidence to raise an affirmative defense under the Act, the trial court must view the evidence in favor of the defendant. State v. Ginn, 128 Wash.App. 872, 882, 117 P.3d 1155 (2005). However, we find no evidence the court failed to do so. Notwithstanding the court's comment, it ultimately ruled in Mr. Adams' favor at the first hearing. Although the court reversed its decision upon reconsideration, the State correctly pointed out during *1060 the hearing that Mr. Adams need only make a prima facie case to raise the defense. We find nothing in the record to indicate that the court required Mr. Adams to make any more than a prima facie showing that he was an authorized caregiver under the Act.
¶ 12 We now turn to the primary issue  whether the trial court erred in prohibiting Mr. Adams from presenting the primary caregiver affirmative defense under the Act. This requires us to determine whether the court's factual findings are adequate to support its conclusion that Mr. Adams failed to satisfy the requirements of the Act. State v. Hanson, 138 Wash.App. 322, 325-26, 157 P.3d 438 (2007). To the extent that the court interpreted the Act, our review is de novo. State v. Shepherd, 110 Wash.App. 544, 550, 41 P.3d 1235 (2002).
¶ 13 The Medical Marijuana Act protects people who supply marijuana to qualified patients. RCW 69.51A.005. "The Act provides an affirmative defense for patients and caregivers against Washington laws relating to marijuana." Shepherd, 110 Wash.App. at 549, 41 P.3d 1235; former RCW 69.51A.040(2).
¶ 14 Under former RCW 69.51A.040(1):
If charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established the affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter.
¶ 15 A caregiver must satisfy the following requirements:
(a) Meet all criteria for status as a primary caregiver to a qualifying patient;
(b) Possess, in combination with and as an agent for the qualifying patient, no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply;
(c) Present a copy of the qualifying patient's valid documentation required by this chapter, as well as evidence of designation to act as primary caregiver by the patient, to any law enforcement officer requesting such information.
Former RCW 69.51A.040(4).
¶ 16 A defendant is required to obtain his authorizing documentation in advance of law enforcement questioning. State v. Butler, 126 Wash.App. 741, 750-51, 109 P.3d 493 (2005). Further, a caregiver must be designated by a qualified patient before arrest or seizure. State v. Phelps, 118 Wash. App. 740, 745, 77 P.3d 678 (2003). As discussed above, to raise the defense, a defendant need only make a prima facie showing. Butler, 126 Wash.App. at 744, 109 P.3d 493; Ginn, 128 Wash.App. at 878-79, 117 P.3d 1155.
¶ 17 Here, the record establishes that Mr. Adams obtained the proper documentation designating him a primary caregiver for Mr. Ward well in advance of law enforcement contact. However, the trial court refused to admit these documents, concluding that Mr. Adams' presentation of the documents a year and a half after his contact with law enforcement was too late. Mr. Adams does not dispute that the Act requires presentment of valid documentation when requested by police, but points out that due to his arrest away from home, he was never given a chance to obtain the documents in his possession.
¶ 18 We agree. Given that Mr. Adams possessed the appropriate authorizing documents at the time of his arrest and was cooperative with police, we find nothing to suggest that Mr. Adams would not have provided such documents if requested by law enforcement. He simply was not given the chance to do so. Officer Howard's police report states that upon arrival at Mr. Adams' workplace, he immediately arrested Mr. Adams, who spontaneously told him that he had a medical marijuana permit. Officer Howard did not ask any follow-up questions or request any documentation. Instead, Mr. Adams was taken directly to jail. During the drive to the jail, police did not ask Mr. Adams any questions. The court faults Mr. Adams for failing to provide the documents at the time of his arrest, but fails to explain *1061 how he could have retrieved them given the fact he was arrested away from home and immediately taken to jail.
¶ 19 Once at the jail, Mr. Adams was not given any opportunity to retrieve his documents. In fact, the record indicates that Officer Cooper was not interested in any such documents, focusing his questioning on Mr. Adams' knowledge of other suspected marijuana growers in the area. The four-page documentation of Officer Cooper's interview with Mr. Adams does not once reference Mr. Adams' marijuana permits or the circumstances of his marijuana possession. The trial court faults Mr. Adams for failing to reference the marijuana permits in the written statement, but the record is clear that he was never asked about them.
¶ 20 The State suggests that Mr. Adams should have carried the permit at all times, but nothing in the Act indicates that this was the intent of the legislature. Former RCW 69.51A.040(4)(c) simply requires a defendant to provide a copy of the qualifying patient's valid documentation and evidence that the defendant is a primary caregiver to law enforcement upon request.

CONCLUSION
¶ 21 Viewed in the light most favorable to Mr. Adams, we conclude that he produced sufficient evidence to raise the primary caregiver defense. He obtained the required documents well in advance of his arrest, but was never asked to provide them. Had officers shown any interest in obtaining the documents or assisted Mr. Adams in retrieving them, and Mr. Adams had been unwilling or unable to do so, then he would not have satisfied the requirements of the statute. But that is not the case here. The trial court erred in refusing to allow Mr. Adams to present his authorizing documents. We therefore reverse the conviction and remand for proceedings consistent with this opinion.
WE CONCUR: SWEENEY and KORSMO, JJ.