**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 31, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 31, 2022

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                        )    No. 99452-8
          Petitioner, )
                        )
   v.                    )    En Banc
                        )
DOUGLAS VIRGIL ARBOGAST, )
                        )
          Respondent. )    Filed : March 31, 2022
_____ )

MADSEN, J.—Douglas Virgil Arbogast was charged with two counts of attempted child rape as a result of a Washington State Patrol sting operation. Police officers posted an advertisement online and posed as a mother seeking a person to teach her two children about sex. Arbogast answered the ad, exchanged messages with undercover officers, and was later arrested. At trial, Arbogast sought to present the affirmative defense of entrapment and his lack of criminal convictions as evidence that he was not predisposed to commit the charged crimes of attempted child rape. The trial court declined to allow evidence of his lack of criminal record or instruct the jury on

No. 99452-8

entrapment.  Arbogast was convicted.  A divided panel of the Court of Appeals reversed and remanded the case for a new trial.

Entrapment is ultimately an issue for the fact finder.  We recognize, however, that cases discussing the defense have used various terms to describe the burden of production defendants must meet to justify an instruction.  We granted review to, among other things, resolve this confusion.

We hold that to obtain an entrapment instruction, defendants must make a prima facie showing that (1) the crime originated in the mind of the police or an informant and (2) the defendant is induced to commit a crime that he or she was not predisposed to commit.  RCW 9A.16.070(1).  The measure of a prima facie showing is whether the evidence offered, considered in a light most favorable to the defendant, is sufficient to permit a reasonable juror to find entrapment by a preponderance of the evidence.  Here, Arbogast offered sufficient evidence to justify an instruction.  Whether he can establish the defense is ultimately a decision for the jury.  We affirm the Court of Appeals.

BACKGROUND

Arbogast testified that his wife of 48 years underwent surgery, after which sex became painful.  Consequently, Arbogast began looking online for casual sexual encounters with other women.  He responded to numerous personal ads, eventually leading to no-strings-attached sex.

2

No. 99452-8

Shortly after a successful casual encounter, Arbogast responded to an online ad[1] posted by "Brandi," an undercover Washington State Patrol officer. 7 Tr. of Verbatim Report of Proceedings (VRP) (June 15, 2018) at 1359-61. After initial introductions were made, Brandi e-mailed Arbogast that she was "single and looking for some one that is open and free to new ideas." Ex. 2 (e-mail at 5:54 PM). Arbogast then asked Brandi specifically to tell him about herself. She explained that she started sleeping with her father when she was young, and that she wanted her "kids to experience the same closeness" and needed "a techer [sic] to help them with sex when they get older." Ex. 3, at 2 (text at 6:33:02 PM). Brandi clarified that she had "lost [her] attraction to men" and was instead interested in "young boys about [her] sons [sic] age." *Id.* (text at 6:33:59 PM). Arbogast responded that he was "probably a we [sic] bit older and . . . can be easy and exploring into everything you might desire. So if you want to try someone older, game on." *Id.* (text at 6:46:54 PM). Brandi also stated that her family already had experience with a sexual teacher who moved away due to military commitments.

At this point in the conversation, Arbogast texted that he reread Brandi's first e-mails and told her that he had not had sex with children and was interested in her. *E.g.,*

---

[1] The ad stated:

> Mommy likes to watch—young family fun—420 friendly—w4m (Rich$land) Mommy luvs to watch family fun time. Looking for that special someone to play with. 100% I know this is a long shot but I have been looking for this for a long item [sic] and haven't had any luck. looking for something real and taboo. If this is still up then I am still looking. send me your name and your favorite color so I know you are not a bot. I like to watch ddlg daddy/dau, mommy/dau mommy/son.

Ex. 1. The abbreviation "w4m" means woman for man, "420 friendly" relates to cannabis, and "ddlg" is the abbreviation for daddy, daughter, little girl. 5 RP at 882, 918, 891.

3

No. 99452-8

*id.* at 3 (texts at 7:15:42 PM, 7:19:25 PM) ("just wanted to be with mom," "[d]on't known if [he] could help do kids," and "never thought about that way"). Brandi replied that she was not looking for a partner for herself, but for her children. After texting that he had not tried young kids, Arbogast said had looked at young girls and would "like to try a young lady once." *Id*. at 4 (text at 7:29:22 PM). Arbogast then texted that he did not think he could devote the time "necessary for this training" for the children and asked to meet with Brandi publicly for coffee to discuss it further. *Id*. (texts at 7:41:27 PM, 7:49:06 PM). Brandi reaffirmed that she was not looking for a partner herself and that she homeschooled the children, allowing her to keep their "secrets." *Id.* at 5 (texts at 7:56:35 PM, 7:57:06 PM). Arbogast texted back: "And my secret as well if chosen." *Id*. (text at 7:58:14 PM).

Brandi and Arbogast then exchanged photos. Arbogast texted that he wanted to give Brandi "TLC [(tender loving care)]." *Id*. at 5 (texts at 8:16:57 PM, 8:20:02 PM). Brandi answered that she "could get inv[ol]ved with [Arbogast] and [J]ake [(her son)] after a few good sessions of you two but [was] not into it" and asked Arbogast to "change [her] mind about us hooking up?" *Id*. (texts at 8:21:35 PM, 8:22:26 PM). In response, Arbogast stated, "OK you mean I need to groom the boy alone? What about your princess[?]" and "Never have done kids before." *Id*. at 6 (texts at 8:23:47 PM, 8:24:12 PM). After exchanging another series of texts discussing how frequently Arbogast would meet with the children, he texted "we should meet and try it out." *Id*. (text at 8:31:00 PM). Brandi outlined the rules, saying there could be no pain, no anal penetration,

4

No. 99452-8

condoms were required, he would stop when asked, and he could not get the daughter pregnant. The rules also required Arbogast to come to her home and when he arrived "we all get naked." *Id*. (text at 8:36:34 PM). Arbogast agreed, stating that he was sterile and looking for oral and regular sex. Minutes later, Arbogast repeated that he was interested in Brandi romantically, but she clarified that she would not be involved.

Brandi texted that they should meet soon so that she would be "less cautious its [sic] not a set up," and she suggested that Arbogast come over to her apartment that night. *Id*. at 8 (texts at 9:00:05 PM, 9:06:18 PM). Brandi instructed Arbogast to bring condoms and lubricant, and said that she had to prepare the children. Arbogast again responded that he "[had] not done this before" but "[c]ould do almost anything without penetration." *Id*. at 9 (text at 9:19:42 PM). When Brandi asked if Arbogast wanted the daughter or son or both, he responded he wanted the daughter dressed in "[j]ust under things" and would perform and receive oral sex. *Id*. at 9-10 (texts at 9:21:40 PM, 9:22:34 PM, 9:25:17 PM, 9:26:18 PM, 9:27:15 PM, 9:28:14 PM).

On arriving at the apartment, Arbogast was arrested. He did not have condoms or lubricant; he agreed to speak with the detectives, allowing them to search his phone and car. Arbogast was interrogated at the apartment site and took a polygraph examination. The polygraph indicated that Arbogast showed no deception when he answered he had no previous sexual contact with anyone under the age of 16. Arbogast's phone showed no evidence of child pornography or that he sought sex with children in the past.

5

No. 99452-8

Arbogast was charged with two counts of attempted child rape in the first and second degree. In pretrial motions, Arbogast sought to admit the results of his polygraph on the question of whether he had ever tried to engage in sexual contact with children and to call the officer who administered the test as an expert witness, as relevant to entrapment. Alternatively, Arbogast argued the polygraph should be admitted to determine only whether an entrapment instruction was allowed. The motions were denied because the State was unwilling to stipulate to the admissibility of the polygraph. Arbogast also sought a jury instruction on entrapment. The court reserved that motion for resolution at trial.

In its own pretrial motions, the State sought to prohibit any mention of Arbogast's lack of criminal history. The court agreed, finding it was premature until Arbogast presented evidence of government inducement or luring, another requirement of entrapment.

At trial, Arbogast testified that he never intended to have sex with children. Arbogast responded to the online ad because he wanted a casual sexual encounter with an adult woman. Arbogast had previously met with a woman before in response to such an ad. Despite Brandi's put-offs, Arbogast testified that he thought he could persuade Brandi and so continued to play along, indicating interest in the children only to get on the mother's good side. Despite acknowledging the conversation with Brandi concerned sex with her children, Arbogast maintained that he did not intend to act on his statements. A police officer who had spoken to Arbogast after his arrest testified that Arbogast said

No. 99452-8

he intended "be with the children," 8 VRP (June 18, 2018) at 1446, but admitted on cross-examination that it was unclear whether Arbogast meant to have sex with the children or just be present with them.

At the conclusion of its case, the State argued an entrapment instruction was not justified because Arbogast failed to show government inducement and a lack of predisposition by a preponderance of the evidence. The court agreed, concluding that there was some evidence to support luring but no more than normal. The court therefore denied the entrapment instruction and precluded evidence showing the absence of a criminal record to show lack of predisposition.

A jury convicted Arbogast of both counts of attempted child rape. He received a standard range sentence of 90 and 76.5 months respectively for the two charges, to be served concurrently.

In a split opinion, Division Three of the Court of Appeals reversed. *State v. Arbogast*, 15 Wn. App. 2d 851, 854, 478 P.3d 115 (2020). The majority made three holdings relevant to the case before us: (1) it rejected *State v. Trujillo*, 75 Wn. App. 913, 883 P.2d 329 (1994), (2) it held that Arbogast's lack of criminal history was admissible under ER 404, and (3) it held Arbogast presented sufficient evidence of inducement entitling him to an entrapment instruction. *Id.* at 871-78. The dissent disagreed that *Trujillo* is incorrect, concluded that Arbogast was not entitled to an instruction, and held that even if an instruction was justified, it was harmless error not to provide it. *Id.* at 880, 886 (Korsmo, A.C.J., dissenting). The State petitioned for review here, which we

7

No. 99452-8

granted. *State v. Arbogast*, 197 Wn.2d 1007 (2021). We received amicus curiae briefing from the Washington Association of Criminal Defense Lawyers urging us to affirm the Court of Appeals.

ANALYSIS

Primarily at issue in this case is the standard for obtaining an entrapment instruction and whether Arbogast presented evidence sufficient to obtain such an instruction. We review de novo a trial court's refusal to provide a requested jury instruction where the refusal is based on a ruling of law. *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998). A court's refusal to give an instruction based on factual reasons is reviewed for an abuse of discretion. *Id*. at 771-72; *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002) (applying abuse of discretion review if a trial court refuses an instruction for lack of evidentiary support).

I. Entrapment

In Washington, entrapment was a defense available at common law and is now a statutory defense. In 1975, state lawmakers codified entrapment in statute, providing that

> (1) In any prosecution for a crime, it is a defense that:
>     (a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and
>     (b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.
>     (2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

RCW 9A.16.070; *see State v. Lively*, 130 Wn.2d 1, 9-10, 921 P.2d 1035 (1996) (citing *State v. Smith*, 101 Wn.2d 36, 42, 677 P.2d 100 (1984)). Defendants must prove

8

No. 99452-8

entrapment by a preponderance of the evidence.  *Lively*, 130 Wn.2d at 13.  Other

jurisdictions, including under federal law, shift the burden from the defendant to the

government and require disproving entrapment beyond a reasonable doubt.  *Id*.  We

considered and rejected this approach in *Lively*, reasoning that Washington has long

required defendants to prove affirmative defenses by the preponderance standard because

these defenses are "'uniquely within the defendant's knowledge and ability to establish.'"

*Id*. (quoting *State v. Riker*, 123 Wn.2d 351, 367, 869 P.2d 43 (1994)).  We saw no reason

to distinguish entrapment from other defenses and thus no reason to shift the burden from

the defendant to the State.  *See id*.  Thus, defendants are ultimately responsible for

proving they were improperly induced to commit a crime they otherwise would not have

committed.  *Id*.

While *Lively* settled the ultimate burden of proof for entrapment, other cases have

created confusion about the burden of production, that is, the quantum of evidence

necessary to raise the defense and get it before a jury.  Before delving into these cases, it

is useful to first define the relevant burdens.

The burden of proof includes two related but distinct concepts: the burden of

production and the burden of persuasion.  *Fed. Signal Corp. v. Safety Factors, Inc.*, 125

Wn.2d 413, 433, 886 P.2d 172 (1994).  The burden of production identifies issues of fact

for the fact finder.  *In re Dependency of C.B.*, 61 Wn. App. 280, 282, 810 P.2d 518

(1991).  It imposes a level of evidence that must be met to present a defense to the jury.

Paul H. Robinson, *Criminal Law Defenses: A Systematic Analysis*, 82 COLUM. L. REV.

No. 99452-8

199, 250-51 (1982). The burden of persuasion defines the fact finder's degree of certainty with which to decide the issues. *In re Det. of Skinner*, 122 Wn. App. 620, 629, 94 P.3d 981 (2004); 2 ROGER P. MOSTELLER, ET AL., MCCORMICK ON EVIDENCE § 336 (8th ed. 2020). The burden of production is decided by the trial court. *See State v. Fisher*, 185 Wn.2d 836, 849, 374 P.3d 1185 (2016); MCCORMICK ON EVIDENCE, *supra*, § 336. "Whether the burden of persuasion has been met is for the finder of fact." *Nw. Pipeline Corp. v. Adams County*, 132 Wn. App. 470, 475, 131 P.3d 958 (2006) (citing *Renz v. Spokane Eye Clinic, PS*, 114 Wn. App. 611, 623, 60 P.3d 106 (2002)). In short, the burden of production requires defendants to present some evidence on the elements of the defense and the burden of persuasion requires defendants to affirmatively establish those elements based on the facts presented. *See State v. Bishop*, 90 Wn.2d 185, 188, 580 P.2d 259 (1978).

As noted, *Lively* concerned the burden of persuasion for entrapment. 130 Wn.2d at 13. *Lively* did not discuss the burden of production, but this court has addressed it elsewhere. We have said that defendants are "'entitled to have the jury instructed on [their] theory of the case if there [was] evidence to support that theory.'" *Fisher*, 185 Wn.2d at 848-49 (second alteration in original) (quoting *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997); *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993)). However, affirmative defense cases have at times used different language in describing the burden of production to obtain an instruction. We take this opportunity to reaffirm that the burden remains "some evidence" to support the required elements.

10

No. 99452-8

A.  The Burden of Production in Affirmative Defense Case Law

Generally, affirmative defense instructions are permitted upon a prima facie showing of some evidence in support of the defense.  *See State v. Montano*, 169 Wn.2d 872, 879, 239 P.3d 360 (2010); *State v. Rio*, 38 Wn.2d 446, 454-55, 230 P.2d 308 (1951). For example, for the defense of medical use of cannabis, a defendant "need make only a prima facie case to raise the defense."  *State v. Adams*, 148 Wn. App. 231, 235, 198 P.3d 1057 (2009).  For instructions on self-defense, justifiable homicide, insanity, and a lesser included offense, a defendant must produce *some* evidence.  *Janes*, 121 Wn.2d at 237 (a self-defense instruction requires defendants to "produce some evidence regarding the statutory elements of a reasonable apprehension of great bodily harm, and imminent danger");[2] *State v. Espinosa*, 8 Wn. App. 2d 353, 362, 438 P.3d 582 (2019) (citing *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997) (justifiable homicide requires "some evidence" demonstrating self-defense or defense of another)); *State v. Box*, 109 Wn.2d 320, 322, 745 P.2d 23 (1987) (an insanity instruction "require[s] a defendant to bear the initial burden of producing some evidence"); *State v. Ritchey*, 1 Wn. App. 2d 387, 390, 405 P.3d 1018 (2017) ("'some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense'" (quoting *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990))).

---

[2] Unlike other affirmative defenses, in self-defense cases, the State has the constitutional burden to prove the absence of the defense beyond a reasonable doubt.  *State v. Acosta*, 101 Wn.2d 612, 683 P.2d 1069 (1984); *State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014).

11

No. 99452-8

A handful of cases describe the burden differently. For example, in *State v. O'Dell*, this court said that "[a] defendant is entitled to a jury instruction that is supported by *substantial* evidence in the record." 183 Wn.2d 680, 687-88, 358 P.3d 359 (2015) (emphasis added) (citing *State v. Griffith*, 91 Wn.2d 572, 574, 589 P.2d 799 (1979)). Similarly, cases discussing duress have held that juries will not consider the defense unless substantial evidence is presented in support. *See State v. Healy*, 157 Wn. App. 502, 505, 237 P.3d 360 (2010) (citing *State v. Turner*, 42 Wn. App. 242, 245, 711 P.2d 353 (1985)). In *State v. Hughes*, the court referred to both some evidence and substantial evidence: "Each side is entitled to have the trial court instruct upon its theory of the case if there is evidence to support the theory. On the other hand, it is prejudicial error to submit an issue to the jury when there is not substantial evidence concerning it." 106 Wn.2d 176, 191, 721 P.2d 902 (1986) (footnote omitted) (citing *Albin v. Nat'l Bank of Commerce*, 60 Wn.2d 745, 754, 375 P.2d 487 (1962); *State v. Heath*, 35 Wn. App. 269, 271-72, 666 P.2d 922 (1983)).

A second line of cases uses the substantial evidence language. This court's decision in *Griffith*, 91 Wn.2d at 574-75, stated that defendants are entitled to an instruction if it is supported by substantial evidence, relying on *Langan v. Valicopters, Inc.*, 88 Wn.2d 855, 567 P.2d 218 (1977), and *Board of Regents v. Frederick & Nelson*, 90 Wn.2d 82, 579 P.2d 346 (1978). *Langan* and *Board of Regents*, in turn, cite to

12

No. 99452-8

decisions that terminate at *Woods v. Goodson*, 55 Wn.2d 687, 689, 349 P.2d 731 (1960).[3]

*Woods*, however, restates the general rule: "Each party is entitled to have [their] theory of the case presented to the jury, if there is any evidence to support it." *Id*. Thus, *Griffith* rests on authorities that require "some evidence."

Simply put, our case law has used different terms to articulate the burden of production. We take the opportunity to clarify that regardless of the terms used, the quantum of proof justifying an instruction on a party's theory of the case is some evidence supporting the proposition. As this court explained in *State v. O'Connell*, the concern is allowing the jury to speculate on an issue not supported by evidence. 83 Wn.2d 797, 818, 523 P.2d 872 (1974).

### B. Burden of Production in Entrapment Cases

Division One of the Court of Appeals first addressed the burden of production for entrapment in *State v. Galisia*, 63 Wn. App. 833, 836, 822 P.2d 303 (1992), *abrogated on other grounds by Trujillo*, 75 Wn. App. 913. *Galisia* held that defendants need not present evidence "necessary to create a reasonable doubt in the minds of the jurors" to obtain an entrapment instruction but, instead, submit only "some evidence" in support. *Id*. (citing *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983) (plurality opinion); *State v. Roberts*, 88 Wn.2d 337, 345-46, 562 P.2d 1259 (1977)). Division One concluded that the defendant in that case was not entitled to an instruction because the

---

[3] *Langan* cites to *Hester v. Watson*, 74 Wn.2d 924, 925, 448 P.2d 320 (1968), which cites to *Kelsey v. Pollock*, 59 Wn.2d 796, 798-99, 370 P.2d 598 (1962), which in turn relies on *Woods*, 55 Wn.2d at 689. *Board of Regents*, 90 Wn.2d at 86, cites to *Woods*.

13

record "would not permit a reasonable jury to conclude that on the day in question, [the defendant] was 'lured or induced to commit a crime which [they] had not otherwise intended to commit.'" *Id.* at 837 (quoting RCW 9A.16.070(1)).

Two years later, Division One revisited the burden of production for entrapment in *Trujillo*, 75 Wn. App. at 917. *Trujillo* acknowledged that instructions are generally given to the jury if evidence exists to support a defendant's theory. *Id.* (citing *State v. Davis*, 119 Wn.2d 657, 665, 835 P.2d 1039 (1992)). But *Trujillo* disagreed with *Galisia*'s holding that defendants needed to produce only "'some evidence' to support an entrapment instruction." *Id.* (citing *Galisia*, 63 Wn. App. at 836). The court expressed concern that *Galisia*'s some evidence standard was an "overly broad" quantum of proof that permitted entrapment instructions upon production of a "mere scintilla of evidence." *Id.*

In the present case, Division Three rejected *Trujillo* as announcing an improperly heightened burden of production. The court distinguished the opinions on which *Trujillo* relied, *Riker* and *Chapin*, correctly recognizing that neither concerned the burden of production. *Arbogast*, 15 Wn. App. 2d at 871-72; *Riker*, 123 Wn.2d at 366-69 (discussing the burden of proof for duress); *State v. Chapin*, 75 Wn. App. 460, 470-72, 879 P.2d 300 (1994) (discussing the burden of proof for entrapment). The *Arbogast* court was concerned that *Trujillo* improperly encouraged a trial court to weigh the evidence and determine whether it "would preponderate for a rational juror." 15 Wn. App. 2d at 872. Instead, Division Three applied the prima facie or "some evidence" standard to

14

justify an entrapment instruction, noting its use in both criminal and civil cases. *Id*. at

873 (citing *State v. Knapstad*, 107 Wn.2d 346, 356-57, 729 P.2d 48 (1986); *Cornwell v.*

*Microsoft Corp.*, 192 Wn.2d 403, 410-13, 430 P.3d 229 (2018)).

The State contends that *Arbogast* erred in departing from *Trujillo.* As discussed

above, the proper burden of production to support an affirmative defense for entrapment,

like any affirmative defense, is when defendants present some evidence in support,

meaning defendants are entitled to an instruction whenever there is sufficient evidence to

create a jury question on the issue of whether the defendant was entrapped. *See Mathews*

*v. United States*, 485 U.S. 58, 62-63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988).

Neither party here argues that entrapment is dissimilar from other affirmative

defenses on this point. *See also United States v. Rodriguez*, 858 F.2d 809, 813 (1st Cir.

1988) (stating the "bedrock" view that "the defense of entrapment stands on no different

footing than most other theories of criminal defense").[4] Since *Galisia* set out the proper

burden of production, to the extent that *Trujillo* disapproved of *Galisia*, it is incorrect.

Additionally, *Trujillo*'s characterization of the burden of production in the

entrapment context warrants clarification. *Trujillo* held that evidence must be "sufficient

to permit a reasonable juror to conclude that the defendant has established the defense of

---

[4] Federal case law views entrapment as a typical affirmative defense in the context of the burden of production. *See Mathews*, 485 U.S. at 63 (supporting the "general proposition" that a party requesting an instruction on its theory must be given if such theory is supported by evidence); *Rodriguez*, 858 F.2d at 814 (treating "entrapment as a garden-variety theory of affirmative defense for purposes of delineating what was needed to frame a jury question" (citing *United States v. Fadel*, 844 F.2d 1425, 1430 (10th Cir. 1988); *United States v. Nations*, 764 F.2d 1073, 1081 (5th Cir. 1985); *United States v. McLernon*, 746 F.2d 1098, 1110-11 (6th Cir. 1984))).

entrapment by a preponderance of the evidence." 75 Wn. App. at 917. This is a correct statement of the law, but the Court of Appeals below was concerned that *Trujillo*'s statement of the test directs trial courts to weigh evidence against the preponderance standard prior to giving the entrapment instruction. *Arbogast*, 15 Wn. App. 2d at 872-73.

We disagree that *Trujillo* directs trial courts to weigh the evidence itself. However, to avoid the concerns identified by the Court of Appeals, courts must take care to differentiate between the burden of production and the burden of persuasion. Whether the evidence is credible and whether it amounts to proof by a preponderance lies with the jury. The court's role in deciding whether to allow an entrapment defense is more limited—it is not the trial court's job to weigh the evidence.

The State next contends that the Court of Appeals erred when it applied the prima facie standard to the burden of production for affirmative defenses. The State asserts that prima facie "has never been used" in this manner and found no cases in support. Suppl. Br. of Pet'r at 6; Amended Pet. for Review at 7. Yet Arbogast points to *Adams*, which required that a defendant "make only a prima facie case to raise the defense" of medical use of cannabis. 148 Wn. App. at 235; *accord State v. Markwart*, 182 Wn. App. 335, 329 P.3d 108 (2014); *State v. Brown*, 166 Wn. App. 99, 104, 106, 269 P.3d 359 (2012); *State v. Fry*, 168 Wn.2d 1, 11, 228 P.3d 1 (2010) (plurality opinion). The State also appears to have overlooked *Rio*, which recognized that a court "is not required to submit instructions to the jury upon every theory requested by a defendant . . . [the defendant] must still

16

No. 99452-8

make a *prima facie* case as a matter of law to entitle him [or her] to instructions upon the theory." 38 Wn.2d at 454-55.[5]

The State also argues that the Court of Appeals relied on an improperly low prima facie standard from *Knapstad*, civil summary judgment cases, and the corpus delicti rule. Success in a *Knapstad* motion to dismiss and on summary judgment, the State notes, forecloses a party's access to the courts and the First Amendment right to petition the government for redress. Courts are reluctant to close their doors to litigants and so apply a "'minimal'" prima facie standard to survive these challenges. Suppl. Br. of Pet'r at 5 (quoting *Fulton v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 152, 279 P.3d 500 (2012)). A similarly minimal prima facie standard has been used in the corpus delicti rule, according to the State.[6] *Id*. This rule was established by courts to protect defendants from the possibility of an unjust conviction based on a false confession alone. *City of Bremerton v. Corbett*, 106 Wn.2d 569, 576, 723 P.2d 1135 (1986). Here, the State claims that reducing the burden of production to that of the corpus delicti rule

---

[5] The State cites to Division Two's decision in *State v. Johnson*, 12 Wn. App. 2d 201, 460 P.3d 1091 (2020), *review granted in part*, 196 Wn.2d 1001, in support of its contention that a prima facie standard is incorrect. In that case, the Court of Appeals recited the familiar but imprecise test that "to obtain a jury instruction regarding the party's theory of the case, there must be substantial evidence in the record supporting the requested instruction." *Johnson*, 12 Wn. App. 2d at 208 (citing *O'Dell*, 183 Wn.2d at 687). To the extent prior cases such as *Johnson* have implied the substantial evident test demands a heightened evidentiary burden, we clarify that it does not. The test has always been and remains some evidence in support to warrant a requested instruction.

[6] "Corpus delicti" means the "body of the crime." *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996).

17

No. 99452-8

would "result in a vast change in the law on affirmative defenses." Suppl. Br. of Pet'r at 6.

The State paints the Court of Appeals' discussion of the prima facie standard with too broad a brush. The court merely noted that the standard is a matter of law and has been used in other situations. Furthermore, the *Arbogast* court did not rely on the corpus delicti formulation of prima facie nor would it be proper to do so. *See generally* 15 Wn. App. 2d at 871-74. Our corpus delicti cases limit the prima facie standard to that "context." *State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996) (citing *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995) (citing *Corbett*, 106 Wn.2d at 578; *State v. Smith*, 115 Wn.2d 775, 781, 801 P.2d 975 (1990))); *State v. McConville*, 122 Wn. App. 640, 650, 94 P.3d 401 (2004). This same rationale applies to *Knapstad* and summary judgment. The quantum of evidence to make a prima facie showing necessarily depends on the context in which it is offered.

II. <u>Inducement</u>

To justify an entrapment instruction, a defendant must present evidence of inducement and predisposition. *Smith*, 101 Wn.2d at 43; *Lively*, 130 Wn.2d at 10. The Court of Appeals in *Arbogast* characterized these elements as "two sides of the same coin," emphasized that predisposition is the focus of entrapment, and concluded that the record showed sufficient evidence of inducement. 15 Wn. App. 2d at 877. The State makes a cursory challenge to the court's "two sides" characterization but primarily disagrees with the holding that Arbogast proved inducement. Suppl. Br. of Pet'r at 7-14.

18

No. 99452-8

As an initial matter, it was not error to characterize inducement and predisposition as two sides of the same coin. More importantly, the Court of Appeals properly recognized the two elements of entrapment while highlighting the importance of predisposition. *Arbogast*, 15 Wn. App. 2d at 877. Contrary to the State's claim, there is no need to reaffirm that entrapment requires proof of both inducement and predisposition—*Arbogast* did nothing to change this requirement.

We turn next to the State's primary argument, whether Arbogast presented evidence of inducement as the Court of Appeals held. Inducement evidence may be based on persuasion, fraudulent representations, threats, coercion, harassment, promises of reward, pleas based on need, and sympathy or friendship. *State v. Hansen*, 69 Wn. App. 750, 766, 850 P.2d 571 (1993), *rev. on other grounds in State v. Stegall*, 124 Wn.2d 719, 881 P.2d 979 (1994). Inducement asks whether police went beyond simply providing a defendant with the opportunity to commit the offense. RCW 9A.16.070; *State v. Youde*, 174 Wn. App. 873, 885-86, 301 P.3d 479 (2013).

In this case, the trial court found Brandi's statement that she could get involved with Arbogast after some sessions with her child constituted evidence of luring by offering a reward for engagement in the illegal behavior. However, the court was convinced that the police engaged in only a "normal amount of persuasion." 7 VRP (June 15, 2018) at 1333. But, that is a jury question. *United States v. Poehlman*, 217 F.3d 692 (9th Cir. 2000), is a similar "sexual mentor" case. There the defendant visited online discussion groups looking for a companion. *Id*. at 695. The defendant responded

19

No. 99452-8

to an ad from an undercover officer posing as a mother in search of someone to fill her family's "unique needs." *Id*. The mother first suggested that the defendant develop a relationship with her children. *Id*. at 699. She relayed her own sexual education with a teacher and sought the same experience for her children. *Id*. The Ninth Circuit concluded that the defendant was induced to commit the crime of engaging in sex acts with a minor, noting that he was originally interested in a relationship with the mother, who explained over the course of their communication that sex with her children was required for her continued interest. *Id*. at 699-700.

*Poehlman* recognized that parental consent is no defense to rape, but it "can have an effect on the 'self-struggle [to] resist ordinary temptations.'" *Id*. at 702 (alteration in original) (quoting *Sherman v. United States*, 356 U.S. 369, 384, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958) (Frankfurter, J., concurring)). Consent, characterizing the activity as a part of parents' responsibility to their children, and selecting a sexual teacher as an expression of confidence can allay a defendant's fears that an act is harmful, distasteful, or inappropriate. *Id*.; *accord United States v. Gamache*, 156 F.3d 1, 11 (1st Cir. 1998). While federal law places the burden of proof for entrapment on the government, unlike Washington, its examination of inducement is relevant and useful in the present case.

As in *Poehlman*, it was the undercover officer Brandi, rather than Arbogast, who first raised the idea that he be a sexual mentor to children. In their initial exchange of messages, Brandi brought up her own sexual history, explaining that she began sleeping with her father when she was young and her mother understood this sexual relationship.

20

No. 99452-8

Brandi wanted the same "closeness" for her children, prompting her to find another sexual teacher for them. Ex. 3, at 2 (text at 6:33:02 PM); *see also id*. at 4 (text at 7:20:45 PM). Discussing her past experience and offering that another man had already served as a teacher, Brandi arguably validated what she was offering to Arbogast—a taboo and illegal sexual relationship. She explained that she sought someone who understood her children's sexual needs regardless of society's acceptance, attempting to dispel fears Arbogast may have had that the activities would be inappropriate. *See Poehlman*, 217 F.3d at 702.

Additionally, like the defendant in *Poehlman*, Arbogast continually stated that he was looking for an adult relationship. *See id*. at 698-99.[7] Brandi opened their conversation by telling Arbogast that she was single and looking for someone open to new ideas. Arbogast responded by asking Brandi to tell him about herself. When presented with the idea of having sex with children, Arbogast said that he had never done so: "Never have done that. I just wanted to be with mom. Don't know if I could help do kids." Ex. 3, at 3 (text at 7:15:42 PM). He also stated that he could not devote enough time for sexual training and asked to meet with Brandi publicly to discuss it. In the midst of their text messages, Arbogast told Brandi specifically that he wanted to give her "TLC." *Id*. at 5 (text at 8:20:02 PM). Though Brandi repeated that she was not interested in a sexual relationship for herself, she raised the possibility that she "could get involved

---

[7] The online ad in *Arbogast* was tagged with "w4m" (woman for man) and "cryptically worded." Ex. 1; 6 VRP (June 14, 2018) at 1127. The undercover officers received messages from people who were not looking for illegal sexual encounters with minors.

21

with [Arbogast] and [J]ake [(her son)] after a few good sessions of you two." *Id*. (text at 8:21:35 PM). Again, similar to *Poehlman*, Brandi made sex with her children a condition of her interest in Arbogast. *See* 217 F.3d at 699-700. According to Arbogast, he engaged in that discussion as "BS-ing" with Brandi and "going with the flow" in order to eventually have sex with her. 7 VRP (June 15, 2018) at 1285.

Inducement is not merely government presentation of an opportunity to commit a crime. There must be opportunity "plus" something else, such as excessive pressure placed on the defendant. *Poehlman*, 217 F.3d at 701. Yet "even very subtle governmental pressure, if skillfully applied, can amount to inducement." *Id*. Here, as in *Poehlman*, a jury could conclude that the police induced Arbogast to commit the charged crime. As one commentator has noted, the sexual mentor sting operation can present difficulties because its targets may "feel pressured to agree to 'teach' a child about sex in the hope of obtaining a sexual relationship with a child's older relative." *Mizner v. State*, 154 So. 3d 391, 393 n.1 (Fla. Dist. Ct. App. 2014) (quoting Christa M. Book, Comment, *Do You* Really *Know Who Is on the Other Side of Your Computer Screen? Stopping Internet Crimes against Children*, 14 ALB. L.J. SCI. & TECH. 749, 762, 771 (2004)). The jury could find that Brandi's messages created just such a situation for Arbogast: she offered the possible reward of an adult sexual relationship if Arbogast continued to engage her desire to arrange a relationship with her children.

Here, the police created and executed the online sting operation, providing some evidence to satisfy the first requirement of an entrapment defense. RCW

22

No. 99452-8

9A.16.070(1)(a). Arbogast also presented evidence that Brandi induced him to commit a crime that he was not predisposed to commit, satisfying the luring element of the defense. RCW 9A.16.070(1)(b). This evidence satisfies the required quantum of proof to obtain an entrapment instruction.

III. Lack of Criminal History

The Court of Appeals also held that evidence of Arbogast's lack of criminal history should have been admitted as evidence under ER 404(a)(1). *Arbogast*, 15 Wn. App. 2d at 875. The State assigned error to this conclusion but appears to concede the evidence is admissible. Amended Pet. for Review at 1, 11-12; Suppl. Br. of Pet'r at 16 ("The defendant could have admitted character evidence if he had a witness who could testify about his reputation for sexual propriety with children under ER 404(a)(1)."). Because we granted review based on the State's petition, we address the issue.

ER 404 generally prohibits evidence of a person's character or trait for the purpose of proving an action in conformity therewith, and proscribes evidence of other crimes or bad acts to prove the defendant's character and conduct in accordance with his or her character. ER 404(a), (b). Regarding character evidence, ER 404 allows for certain exemptions, most relevantly evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same. ER 404(a)(1). ER 404(b) allows evidence of other crimes or wrongdoing for other purposes such as intent, among other things.

23

No. 99452-8

Predisposition is an inquiry into the intention of the defendant. *State v. Swain*, 10 Wn. App. 885, 890, 520 P.2d 950 (1974). The relevant inquiry for an entrapment defense is whether a fact finder could reasonably conclude from the evidence that the defendant had no predisposition to commit the crime until the intent was implanted in his or her mind by police and that the defendant was induced to commit the crime through fundamentally unfair efforts by law enforcement. *State v. Enriquez*, 45 Wn. App. 580, 585, 725 P.2d 1384 (1986). This is a "broad concept, and a broad swath of evidence, including aspects of the defendant's character and criminal past, is relevant to proving predisposition." *United States v. McLaurin*, 764 F.3d 372, 381 (4th Cir. 2014).

In *State v. Woods*, a physician's testimony and written psychosexual evaluations given to the defendant were excluded at trial. 117 Wn. App. 278, 279, 70 P.3d 976 (2003). The testimony and evaluation found no indication of sexual impulsivity and no predisposition to sexual attraction to children. *Id*. Though character evidence is generally inadmissible, a defendant may present evidence of a pertinent character trait. ER 404(a)(1). "Sexual morality" is such a pertinent trait in cases involving sexual offenses. *State v. Griswold*, 98 Wn. App. 817, 823, 991 P.2d 657 (2000). Thus, on appeal, *Woods* held that the lack of sexual impulsivity and predisposition evidence was relevant. *See* 117 Wn. App. at 279. In *Lively*, this court noted that the defendant had "no criminal record *nor any prior involvement* selling illegal narcotics" and that the defendant was not a target of prior drug investigations. 130 Wn.2d at 18 (emphasis added). *Lively*

24

No. 99452-8

took explicit notice of a defendant's activities outside of their criminal record.[8] In the

proper case, a defendant's lack of criminal history may be admitted under ER 404(a)(1).[9]

We affirm the Court of Appeals on this issue.[10]

### IV. Harmless Error

The Court of Appeals held that precluding an entrapment instruction violated

Arbogast's constitutional right to present a defense and to a jury trial. *Arbogast*, 15 Wn.

App. 2d at 873.

Courts review whether a Sixth Amendment right to present a defense has been

violated de novo but apply an abuse of discretion standard when reviewing evidentiary

rulings. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). The court first

---

[8] The court in *Arbogast* looked to cases interpreting the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, for guidance. 15 Wn. App. 2d at 874. While the SRA obviously governs sentencing, it also considers a defendant's lack of "apparent predisposition to" commit a crime as a mitigating circumstance for an exceptional sentence. RCW 9.94A.535(1)(d). This court has held that the lack of criminal history is an insufficient ground for sentencing below the standard range. *State v. Freitag*, 127 Wn.2d 141, 144, 896 P.2d 1254 (1995). The SRA does not provide a useful corollary here.

[9] In his dissent, Acting Chief Judge Korsmo agreed that Arbogast's lack of predisposition evidence should have been admitted because Arbogast testified and put his reputation for sexual morality in question, citing ER 608. *Arbogast*, 15 Wn. App. 2d at 886 & n.17. ER 608 may provide another avenue for admitting some types of evidence that show a lack of criminal history, but because neither party argued the rule applies, it is not before us.

[10] As noted, the State appears to concede that Arbogast's lack of criminal history is admissible under ER 404(a)(1) and contends that the reputation evidence must be offered by someone other than Arbogast. Suppl. Br. of Pet'r at 16-17 (citing *State v. Mercer-Drummer*, 128 Wn. App. 625, 116 P.3d 454 (2005)). In *Mercer-Drummer*, a defendant testified that she had never been convicted of a crime in order to establish good character. 128 Wn. App. at 630. The Court of Appeals assumed without deciding that the character evidence was admissible pursuant to ER 404(a), but it held that the defendant did not meet ER 405's methods of proving character. *Id.* Because the trial court here declined to allow the entrapment instruction and precluded any mention of Arbogast's lack of criminal history, the potential form of that evidence need not be decided.

No. 99452-8

analyzes the trial court's evidentiary rulings for abuse of discretion and then determines whether the exclusion of evidence violated the defendant's constitutional right to present a defense. *Id*. at 798-813. A trial court abuses its discretion if the court applies the wrong legal standard, relies on unsupported facts, adopts a view that no reasonable person would take, or bases its ruling on an erroneous view of the law. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

In this case, the trial court found Arbogast did not present evidence of inducement by a preponderance of the evidence and, accordingly, declined to give an entrapment instruction or allow evidence on lack of predisposition. But, whether the evidence meets the burden of proof by a preponderance is reserved for the jury. *Lively*, 130 Wn.2d at 13. Arbogast offered some evidence on each prong of the entrapment defense. The trial court applied the wrong legal standard in determining whether to give the requested entrapment instruction and thus abused its discretion. *See Mayer*, 156 Wn.2d at 684.

The State contends that an entrapment defense would not have changed the outcome of the trial because the jury necessarily rejected Arbogast's defense that he did not intend to have sex with children in convicting him of attempted child rape. Essentially, the State's argument is that Arbogast presented evidence amounting to entrapment, which the jury rejected when it convicted him. But the jury was not instructed on the law of entrapment.

The purpose of an instruction is to guide the jury in their deliberations and aid them in arriving at a proper verdict. *State v. Allen*, 89 Wn.2d 651, 654, 574 P.2d 1182

26

No. 99452-8

(1978). The chief objectives for a judge instructing the jury are to explain the law of the case, identify the essential burdens to be proved by the State or the defendant, and bring into view how particular evidence relates to particular issues. *Id*. (citing *Bird v. United States*, 180 U.S. 356, 21 S. Ct. 403, 45 L. Ed. 570 (1901)); *State v. Huckins*, 66 Wn. App. 213, 217, 836 P.2d 230 (1992). The jury in this case was left without an instruction explaining the elements of entrapment or how the evidence presented would relate to those elements. Presenting evidence without the essential context of a legal theory risks delegating to the jury the task of determining the law. *See United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984) (holding it impermissible for a trial judge to delegate determining the law of the case to the jury).

Moreover, instructional error has been held to be harmless if it is "'trivial, or formal, or merely academic,'" was not prejudicial to the substantial rights of the party assigning it, and did not affect the final outcome of the case. *McCullum*, 98 Wn.2d at 497 (emphasis omitted) (quoting *State v. Savage*, 94 Wn.2d 569, 578, 618 P.2d 82 (1980); *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977) (plurality opinion); *State v. Golladay*, 78 Wn.2d 121, 139, 470 P.2d 191 (1970), *overruled in part by State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976)). The failure to instruct on entrapment was far from trivial or merely academic here; it precluded Arbogast from contextualizing the evidence with the law and prevented him from presenting the defense he wished. As we have discussed, a reasonable juror *could* have concluded that Arbogast was entrapped. Thus, the trial court's refusal to allow an entrapment defense or to admit evidence that

27

No. 99452-8

Arbogast had no criminal history or inappropriate involvement with children was not harmless.

CONCLUSION

Entrapment, like other affirmative defenses in Washington, requires defendants to present some evidence supporting the elements of the defense to justify a jury instruction. Here, Arbogast made a prima facie showing of entrapment pursuant to RCW 9A.16.070: that the crime originated with the Washington State Patrol and that Arbogast was induced to commit the crime of attempted child rape, which he otherwise lacked the predisposition to commit—evidence of which (his lack of criminal history) was admissible under ER 404(a). The trial court erred in declining to provide the requested entrapment instruction, and this error was not harmless. We therefore affirm the Court of Appeals.

No. 99452-8

---
Madsen, J.

WE CONCUR:

---
                                                                              Gordon McCloud, J.

---
Johnson, J.

---
Owens, J.

---
                                                                              Montoya-Lewis, J.

---
Stephens, J.

---
                                                                         Whitener, J.

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

No. 99452-8

YU, J. (dissenting) — I agree with much of the majority's analysis in this case. I agree that a defendant, like Douglas Virgil Arbogast, who seeks a jury instruction on the affirmative defense of entrapment "must make a prima facie showing that (1) the crime originated in the mind of the police or an informant and (2) the defendant [was] induced to commit a crime which [they were] not predisposed to commit." Majority at 2 (citing RCW 9A.16.070(1)). I further agree that a defendant's burden of production in making this prima facie showing is to "present some evidence in support, meaning defendants are entitled to an instruction whenever there is sufficient evidence to create a jury question on the issue of whether the defendant was entrapped." *Id.* at 15.

Moreover, I agree "that evidence of Arbogast's lack of criminal history should have been admitted as evidence under ER 404(a)(1)" to support Arbogast's argument that he was not predisposed to commit attempted child rape. *Id.* at 23.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

However, I would hold that this evidentiary error was harmless because Arbogast did not produce any evidence of inducement by law enforcement. The evidence shows only "a normal amount of persuasion" coupled with "[t]he mere use of a decoy or informer to present an individual with an opportunity to commit a crime," which "does not in itself constitute entrapment." *State v. Waggoner*, 80 Wn.2d 7, 10-11, 490 P.2d 1308 (1971); *see also* RCW 9A.16.070(2).

I would therefore reverse the Court of Appeals and hold that the trial court correctly denied Arbogast's request for an entrapment instruction. I respectfully dissent.

ANALYSIS

"Entrapment occurs only when [(1)] the criminal design originated in the mind of the police officer or informer, and [(2)] the accused is lured or induced into committing a crime [they] had no intention of committing." *State v. Smith*, 101 Wn.2d 36, 42, 677 P.2d 100 (1984). Although these two elements are conceptually related, "entrapment requires proof of both inducement and predisposition." Majority at 19. Here, Arbogast did not produce any evidence of inducement. Therefore, the trial court correctly denied Arbogast's request for an entrapment instruction.

"Where the police merely give a defendant an opportunity to commit a crime by employing a ruse, entrapment is not established." *State v. Youde*, 174 Wn. App.

2

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

873, 886, 301 P.3d 479 (2013); *see also* RCW 9A.16.070(2). Moreover, police may use "a normal amount of persuasion to overcome [the] expected resistance" of those looking to commit crimes like child sexual assault, as such individuals are likely to operate with "discretion and suspicion" to avoid arrest. *Waggoner*, 80 Wn.2d at 10-11. Permissible persuasion tactics may include "appeals to sympathy," which "alone are not sufficient to establish entrapment." *Smith*, 101 Wn.2d at 43. "Furthermore, the police, in affording a suspect with an opportunity to violate the law, may use deception, trickery, or artifice." *Id.* (citing *State v. Swain*, 10 Wn. App. 885, 520 P.2d 950 (1974); *State v. Gray*, 69 Wn.2d 432, 418 P.2d 725 (1966)).

Arbogast contends he was induced to commit the attempted rape of two children because "Brandi," the fictional children's purported mother, allegedly conditioned Arbogast's sexual relationship with her on Arbogast's sexual assault of her children. However, he did not produce any evidence to support this contention. To the contrary, when Arbogast texted Brandi to say, "I just wanted to be with mom," Brandi promptly responded, "[T]hanks for not wasting our time. I am not looking for me. I am looking for someone to be with my kids. [G]ood luck with what it is you seek." Ex. 3, at 3. Brandi did not condition sex with her on the sexual assault of her children; she unequivocally told Arbogast that she would not have sex with him.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

Nevertheless, Arbogast continued to text Brandi, telling her that although he had "not tried young kids" before, he "[w]ould like to try a young lady once." *Id.* at 4. After some further discussion about arranging for Arbogast to sexually assault the children, it was Arbogast, not Brandi, who again raised the possibility of an adult sexual relationship, asking, "You sure you don't need some [TLC]?" *Id.* at 5. It was only at this point that Brandi suggested she "could get involved with [Arbogast] *and* [*J*]*ake* [(her 13-year-old son)] after a few good sessions of you two," but she repeated that she was "not into it," and did not "want to take away from [the] kids['] exper[ie]nce." *Id.* (emphasis added).

Thus, even when Brandi attempted a normal degree of persuasion by suggesting she might eventually have some involvement with Arbogast, she did not offer a sexual relationship with her on the condition that Arbogast first sexually assault her children. Instead, Brandi made it clear that all of Arbogast's sexual relations with her family would involve at least one of her children. And when it appeared to Arbogast that he would "need to groom the boy alone," Arbogast immediately asked, "What about your princess," meaning Brandi's 11-year-old daughter. *Id.* at 6. Brandi assured Arbogast that her daughter "is very curious and is in the prime time to learn." *Id.*

Brandi and Arbogast discussed the "rules" that would apply to Arbogast's sexual assault of the children, which Arbogast readily agreed to, and then Brandi

4

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

sent Arbogast a photograph of her fictional family. *Id.* at 6-7. Arbogast said, "I'm in if you want an old guy," and Brandi again reiterated, "[I] have to be clear [I] am not involved . . . [I] don[']t want you to be disappointed and especially don[']t want my kids disappo[i]nted." *Id.* at 8. Arbogast agreed. *Id.*

This is not a case in which the jury must make a credibility determination based on conflicting evidence. The recorded text message exchange unequivocally shows that Brandi never conditioned Arbogast's sexual relationship with her on whether Arbogast would sexually assault her children. Even after Arbogast agreed to assault the children, Brandi did not give any assurance that she would become involved with Arbogast. At the most, Brandi did not say no to Arbogast when he repeatedly initiated the possibility of a future relationship. This is not evidence of inducement. Rather, the police used permissible deception and artifice to present Arbogast with an opportunity to commit the crime of attempted child rape, which he took. *See Smith*, 101 Wn.2d at 42-44; *Waggoner*, 80 Wn.2d at 10-11.

This case is not analogous to the federal "sexual mentor" decisions on which the majority relies. *Contra* majority at 19-22 (discussing *United States v. Poehlman*, 217 F.3d 692 (9th Cir. 2000); *United States v. Gamache*, 156 F.3d 1 (1st Cir. 1998)). *Poehlman* held that "the government induces a crime when it creates a special incentive for the defendant to commit the crime" and found

5

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

evidence of such a special incentive based on the unique features of the interaction between the defendant and police in that case. 217 F.3d at 698.

In *Poehlman*, a police officer posing as a mother "made it clear that she had made a firm decision about her children's sexual education and that she believed that having Poehlman serve as their sexual mentor would be in their best interest. She [also] made repeated references to her own sexual mentor," which appeared to "diminish the risk of detection, [and] it also allayed fears [the] defendant might have had that the activities would be harmful, distasteful or inappropriate." *Id.* at 702; *see also Gamache*, 156 F.3d at 11. The police officer further took on the name that Poehlman used when he dressed in women's clothing, "offering an important symbol of acceptance and friendship." *Poehlman*, 217 F.3d at 700. The "protracted e-mail exchange" between the police and Poehlman lasted "[o]ver six months," during which Poehlman "twice proposed marriage" to the mother. *Id.* In light of this evidence, the court held that the mother made "a sexual relationship with her minor daughters . . . a condition of her own continued interest in him," constituting inducement. *Id.* at 699-700.

This case is not like *Poehlman*. Here, Brandi mentioned only once that she had experience with a sexual mentor, and she did not offer any "special incentive[s]" or "important symbol[s] of acceptance and friendship" to Arbogast. *Id.* at 698, 700. Moreover, the text message exchange between Brandi and

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

Arbogast lasted "less than five hours," unlike the "protracted," "intimate," months-long exchange at issue in *Poehlman*. 7 Tr. of Verbatim Report of Proceedings (June 15, 2018) at 1324; *Poehlman*, 217 F.3d at 700; *see also* Ex. 3 (text messages exchanged on July 5, 2017, from 5:54 p.m. to 10:18 p.m.). Arbogast, like Poehlman, may have sought an adult relationship with an undercover police officer, but unlike the officer in *Poehlman*, Brandi did not "encourage[ ]" Arbogast's "fantasies" about this adult relationship. *Poehlman*, 217 F.3d at 702. The actions of the police in relation to Arbogast were far from the "aggressive intervention" the police used in relation to Poehlman. *Id.* at 702-03.

The police offered Arbogast the opportunity to participate in the crime of attempted child rape, and he took it. This is not inducement. Therefore, the trial court did not abuse its discretion by refusing to instruct the jury on entrapment. In addition, although a criminal defendant has a constitutional "right to present a defense," a defendant has no right to a jury instruction "for which there is no evidentiary support." *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995). Because there was no evidence of inducement in this case, there was no evidentiary support for the entrapment instruction. Accordingly, there is no constitutional violation.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Arbogast*, No. 99452-8
(Yu, J., dissenting)

## CONCLUSION

I would reverse the Court of Appeals and affirm the trial court's ruling that

Arbogast was not entitled to a jury instruction on the affirmative defense of

entrapment.  I therefore respectfully dissent.

_____
Yu, J.

_____
González, C.J.

8